CUTTER and others, Respondents, vs. GREENE, Appellant.

*November. 11—December 9, 1924.*

*Vendor and purchaser: Specific performance: Abstracts of title:*
*Merchantable title: Substantial compliance: When made:*
*Form of decree: Notes and mortgages: Form: When dated:*
*Interest falling due before trial: How payment enforced:*
*Compound interest.*

1. A finding of the trial court that plaintiffs, the vendors in a
   contract for the sale of lands which provided for the delivery
   of a deed on July 1, 1922, had their abstract of title in due
   form on July 20th and had substantially complied with the
   contract in that respect, is *held* supported by the evidence.
   p. 171.
2. Few titles to property exist in which some flaw may not be
   suggested, and in this respect the law requires substantial
   compliance with a requirement in a contract that a vendor of
   land furnish an abstract showing merchantable title.   p. 170.
3. When a vendor has substantially complied with his contract and
   furnished what is deemed to be a good merchantable title, he
   should receive the consideration provided in the contract.
   p. 171.
4. Where the court held that an objection made by the purchaser
   of land to the effect that the vendors' title was defective be-
   cause a dwelling house upon part of the premises sold was
   occupied by a tenant was not made in good faith, and that
   when an abstract was presented in due form on July 20th the
   purchaser had attained the main object and purpose he had in
   mind when he negotiated for the purchase, it was incon-
   sistent and error, in an action brought by the vendors, to
   decree specific performance as of August 26th, the date of
   the surrender of the premises by the tenant, instead as of
   July 26th, the date of the tender of the deed; and on appeal
   by the purchaser, the vendors, having served notice of review,
   are entitled to a modification of the decree in that respect.
   p. 172.
5. The action having been tried some eighteen months after the
   date as of which performance was decreed, the court ordered
   the notes and mortgage to be dated February 26, 1924, to
   mature August 26, 1927, or five years after the date of
   performance. *Held,* that while the result is practically the
   same, the court has created a new contract, whereas the notes
   and mortgage should have been dated as of the date of per-
   formance and mature five years from that date.   p. 172.

6. Three semi-annual instalments of interest having fallen due and not having been paid, the court was warranted in ordering them to be paid, but the effect of the order in no way deprived the vendors of their right to foreclosure upon the default; and the findings and judgment should have provided that the payments when made be indorsed upon the notes. p. 173.

7. A court of equity will enforce a contract as it exists, and will direct that only which is reasonably certain and practicable. p. 175.

8. An order directing the payment of interest on instalments of interest which the contract did not contemplate was error. p. 175.

9. The form of mortgage customarily used by the profession and adopted by the trial court is *held* to have been that contemplated by the contract, the defendant purchaser tacitly assenting to such form by failing to make any objection to it, or requesting the court to use any other form. p. 176.

10. Where plaintiffs conceded that the maturity dates of notes as fixed by the trial court were erroneous, the findings and judgment with respect to such matter will be amended in accordance with the contract. p. 176.

11. The trial court was justified in entering a decree for conveyance to the defendant individually notwithstanding the contract required the deed to run to the N. Company, in view of matter set up in the defendant's answer and the fact that the N. Company was not a party to the contract or to the action, and the defendant was president of the N. Company and controlled it. p. 177.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Modified and affirmed.*

The appeal is from a judgment in favor of the plaintiffs decreeing specific performance of a contract for the sale of real estate.

On May 22, 1922, the parties entered into a contract for the sale of the real estate herein involved for the sum of $55,000, of which amount $1,000 was paid by the defendant when the contract was executed, the balance of the purchase price being payable as follows: $12,750 on or before July 1, 1922, this being the date when the plaintiffs agreed to deliver a warranty deed for the premises to the defendant or to

some one whom he might designate, and an abstract showing merchantable title to date; $41,250 was to be evidenced by six promissory notes, dated the date of the delivery of the deed and due on or before five years from the date thereof, with interest at the rate of six per cent. per annum, payable semi-annually, and each of said notes was to be secured ratably by a first purchase-money mortgage on said premises. Four of said notes were in the sum of $8,250 each, and two for the sum of $4,125 each. The agreement also provided that the mortgage shall contain the so-called mortgage tax clause, requiring the mortgagor to have the said property and the said mortgage assessed together, and that the mortgage shall be delivered to the First Wisconsin Trust Company as agent for the vendors; also that an abstract showing merchantable title is to be delivered to defendant for examination on or before June 15, 1922. The defendant thereupon designated the North Shore Realty Company as the party to whom the deed was to be executed and delivered.

Plaintiffs placed their order for an abstract with the abstract company on or about the 27th day of May, and delivered the abstract to the defendant on or about the 23d day of June. Defendant's counsel concluded his examination of the abstract on July 7th and rendered an opinion on the title, in which a number of objections were raised, which by the mutual co-operation of both parties were satisfactorily remedied, so that on the 20th day of July, as was found by the court, the abstract was in due form.

Prior to the 20th day of July a dispute arose between the parties as to the form of the proposed mortgage, it being claimed by the plaintiffs' counsel that the contract provided for a trust deed in which the First Wisconsin Trust Company was to be named as trustee, and such counsel also insisted that the defendant pay the fees of the trustee. Defendant's counsel claimed that the contract contemplated a straight mortgage, which was to be delivered to the trust company and held by it as agent for the plaintiffs. This dispute,

after some considerable altercation, was finally adjusted by the parties agreeing to pay a specified amount each, of such fees of the trustee. It also appears that the position taken by plaintiffs' counsel as to the form of security was not justified by the contract itself.

The evidence shows that at the time the contract was entered into there was located on the property a certain building which had been used by occupants of the premises at the time they were devoted to farm purposes, and such building, when the contract was entered into and during such time as is hereinafter stated, was occupied by a tenant named Godar. At the date of the contract and for a long time prior thereto the defendant, a real-estate dealer, lived in close proximity to the property herein referred to, and also owned large tracts of platted lands adjoining such property, which he had placed upon the market for sale in lots or parcels, and he therefore entertained a strong desire to acquire plaintiffs' tract so that he might deal with it as he had done with his other property in that locality.

About July 21st the defendant for the first time insisted that Godar's tenancy constituted an incumbrance and that it be terminated. Plaintiffs' counsel suggested that under the lease Godar could be forced to vacate the building occupied by him by the giving of a sixty days' notice. The defendant requested that such notice be deferred until he could communicate with Godar personally, and the defendant actually did thereafter call upon the tenant and offered to permit him to remain upon the premises until the following spring, upon condition that he paid an increased rental, which condition was not accepted. Thereupon the plaintiffs caused to be served upon the tenant a sixty days' notice referred to, which ended on October 1st, but before the arrival of this date the plaintiffs, on paying a consideration to the tenant, secured his removal from the building occupied by him on August 26th.

During part of August and a short time thereafter, in

Cutter v. Greene, 185 Wis. 163.

order to remove all obstacles in the way of the consummation, the parties attempted to arrive at an adjustment of the various contentions made by them at that time, plaintiffs taking the position that the contract should be executed as of date of July 1st, as provided by its terms, and the defendant insisting that the consummation should be effective as of the date of the execution of the deed and the other documents referred to in the contract; and in order to adjust these various contentions, unsuccessful propositions and counter propositions were made. On the 26th day of July plaintiffs tendered their deed and demanded performance from the defendant, which deed defendant refused to accept, owing to the contentions made by him at that time, above indicated. All efforts aiming at a settlement having failed, the plaintiffs in September brought the present action to enforce specific performance.

In his amended answer the defendant offers to specifically perform, but alleges as a ground for his refusal theretofore three reasons: first, the inability of the plaintiffs to furnish an absolute title on account of the existence of the Godar lease; second, on account of the maintenance upon the property of certain poles and wires owned by a public utility, for which it claimed an easement; and third, because the abstract had not been continued to date and did not show payment of the 1921 taxes. The second objection to the title above referred to was abandoned upon the trial, and the court found with respect to the third objection that the abstract was in due form on July 20th.

In the findings of fact the court found, in substance, that Godar was in possession of the dwelling house upon the premises under a lease dated October 8, 1921, and terminating May 1, 1923; that the property was leased solely for residence purposes, and that Godar made no use of any part of the property outside of the residence; that the lease contained a covenant under which the tenancy could be terminated at the end of any calendar month by the giving

of sixty days' notice by either party to the other; that through the efforts of plaintiffs' counsel Godar's lease was actually terminated on August 26th, and that he vacated the premises on that date; that the defendant attained the main purpose in the contract when he secured the title; that Godar's possession under the lease did not constitute a substantial interference with the full enjoyment of the main purpose which the defendant had in mind when he negotiated the contract, and that he sustained no damage in respect thereto; that if he had closed the transaction and had later brought action for damages on the covenants of his warranty deed, he would not have been able to establish more than nominal damages; and that he is not equitably entitled to any compensation or abatement from the contract price by reason thereof. That the plaintiffs have deposited a deed running direct to the defendant, and asked for specific performance; that neither the North Shore Realty Company nor the First Wisconsin Trust Company was before the court.

At the conclusion of the evidence the defendant submitted and requested the court to sign certain proposed findings, among which was one which provided that the defendant ever since July 26th was ready, willing, and able to perform the contract, and in which he offered to perform, upon condition that plaintiffs furnished proper title; and by other findings requested the defendant assumes a similar attitude.

As conclusions of law the court found:

"1. The plaintiffs are entitled to specific performance of the contract by the defendant, *Nathanael Greene,* individually, as of August 26, 1922.

"2. Upon the plaintiffs attaching to the deed running to the defendant the required revenue stamps and depositing for delivery and record all powers of attorney for the execution thereof, with the fees for the recording of such powers of attorney, they are entitled to a judgment requiring the defendant (1) to make payment of the sum of

$12,750, with interest at six per cent. (6 %) per annum from August 26, 1922; the sum of $1,237.50, being the instalment of interest due February 26, 1923, on the face of the notes agreed to be given, with interest thereon at the rate of six per cent. (6 %) per annum from February 26, 1923; the sum of $1,237.50, being the instalment of such interest due August 26, 1923, with interest thereon at the rate of six per cent. (6 %) per annum from August 26, 1923; the sum of $1,237.50, being the instalment of such interest due February 26, 1924, with interest thereon at the rate of six per cent. (6 %) per annum from February 26, 1924; and (2) to execute and deposit for delivery to the plaintiffs six (6) notes, all payable on August 26, 1927, bearing interest at six per cent. (6 %) per annum, payable semi-annually, from February 26, 1924, said notes to be payable to the following persons and for the following amounts respectively:

William B. Cutter, note for $8,250,
Dr. John D. Cutter, note for $8,250,
Harriet L. Cutter, note for $8,250,
Kate S. Curtis, note for $8,250,
Mary H. Cutter Myers, note for $4,125,
Evelyn T. Dorman, note for $4,125,

and a mortgage in the form customarily used in the state of Wisconsin for real-estate mortgages, covering the premises described in the deed, to secure the payment of said notes; said notes and mortgage to be in the form of Exhibits A and B hereunto attached, respectively; and said judgment further to provide that the covenants of warranty in said deed shall not operate as to any taxes or assessments which became due or payable after August 26, 1922, nor as to any defects arising or suffered by reason of any act or default on the part of the defendant after that date.

"3. The plaintiffs are further entitled to a judgment against the defendant for their costs and disbursements herein."

The two exhibits attached to the findings, in which the court definitely fixed and outlined the form of the promissory notes and of the mortgage, will be more specifically dealt with in the opinion.

The cause was submitted for the appellant on the briefs

of *Bohmrich & Gabel,* attorneys, and *W. H. Churchill,* of counsel, all of Milwaukee, and for the respondents on that of *Hoyt, Bender, McIntyre & Hoyt* of Milwaukee.

DOERFLER, J. The court decreed specific performance as of date of August 26, 1922, at which time the tenant, Godar, vacated the building situated upon the premises. The defendant contends that the performance should be decreed as of the date of the judgment. Plaintiffs assume the position that they were ready, able, and willing to perform on July 1st, which was the date contemplated for consummation by the terms of the contract, but that if this court should not agree with them on this contention, that performance should be decreed either as of July 8th, July 12th, or July 20th.

The actual date which a court of equity ought to fix in a case of this kind and under a contract like the one herein involved must depend largely upon a determination of which of the parties was at fault and to blame with respect to the delays which were encountered in the efforts to procure a consummation. A careful perusal of the evidence would indicate that neither of the parties was entirely blameless, and that each was responsible in a large degree for such delays. We are fully conscious that the contract involved is a valuable and important one. The contract price of the property is $55,000. The defendant at all times was as anxious to secure as good and merchantable a title as it was possible for him to obtain, particularly in view of the intentions entertained by him to subdivide and plat the land and to sell it in lots to numerous purchasers. Defects in title as to incumbrances, in description, and in the limitation of the boundaries constituted matters in which the defendant was vitally interested. On the other hand, it is a matter of common knowledge that few titles to property are in existence where some flaw may not be suggested. The law, therefore, in this respect, as in all other respects, requires

a substantial compliance. On the other hand, when a vendor has substantially complied with his contract and has furnished what is deemed to be a good merchantable title, upon performing his part of the contract he should receive that which is due him under the contract as a consideration of the same.

On the 20th of July, as the court found, the abstract was in due form, which meant that the plaintiffs had substantially complied with the contract in that respect. Such finding by the court appears to be well supported by the evidence, and it will therefore serve no useful purpose to review the same. Had the plaintiffs on that date tendered their deed, it would have been incumbent upon the defendant to make the additional payment, to execute or cause to have executed the notes and mortgage, and to thus perform. However, at or about that date the defendant claims to have discovered a new wrinkle, which he advanced as an excuse for not proceeding with the deal. He had lived on premises adjoining the property herein involved for a period of six years before the contract was executed. He was familiar with the poles and wires maintained by the public utility upon the premises. He had knowledge that the dwelling house upon the premises was occupied by a tenant. Notwithstanding these facts, he raised for the first time this objection and insisted, upon the date last mentioned, that this tenancy constituted an incumbrance, and that the plaintiffs' title was defective. The court in substance found that this contention on the defendant's part was not made in good faith; that the tenancy having been open and notorious, it must be assumed, under the circumstances in the case, that the defendant had knowledge thereof; that in fact the tenancy did not constitute an incumbrance, and that the defendant in law is not entitled to any allowance, abatement, or compensation by reason of such tenant's occupation; that the defendant had attained the main object and purpose which he had in mind when

he negotiated for the purchase of this land, when the abstract of title was finally presented in due form, on or about July 20th.

It must be kept in mind that plaintiffs tendered their deed on the 26th day of July, 1922, and, the abstract being remedied as to the alleged defects and it showing good merchantable title when the deed was tendered, the performance should have been decreed as of the latter date. Notwithstanding this situation the court decreed specific performance as of date of August 26th, the day of the surrender of the premises by the tenant. In taking this position it appears to us that the learned trial judge was clearly inconsistent and in error, and we conclude, therefore, that inasmuch as the plaintiffs have served a notice of review as is provided for by the statute, they are entitled to a modification of the judgment to the effect that specific performance shall be decreed as of date of July 26, 1922. For authorities as to the right of the court under circumstances as herein shown to declare specific performance with or without compensation, see Pomeroy, Spec. Perf. (2d ed.) secs. 442–444; 36 Cyc. 742.

The circuit court, in a form of note and mortgage attached to the findings, ordered that the date thereof should be February 26, 1924, and fixed the maturity date as August 26, 1927, so that the date of maturity would be exactly three and one-half years subsequent to the date of such instruments, or five years after the date as of which specific performance was decreed. While from a practical standpoint the obligation as thus imposed upon the defendant is substantially the same under the findings and the judgment as it would be if the instruments referred to were dated in accordance with the terms and provisions of the contract, nevertheless it would appear that the decree as actually formulated created a new contract and declared its specific performance, whereas in an action of this kind it is fundamental that the contract itself should be enforced in

accordance with the terms and provisions therein contained. As heretofore indicated, the court should have enforced specific performance as of date of July 26, 1922. This fixed the date of the execution of the deed, and under the contract the notes were to be made payable on or before five years after such date. In the interval between July 26, 1922, and the date of the decree, three semi-annual instalments of interest became due and payable, which instalments of interest were computed by the court and in its decree were ordered and adjudged to be paid. It is said in *Bauer v. International W. Co.* 201 Mass. 197, 203, 87 N. E. 637:

"There is no principle of equitable jurisprudence which prevents a court of equity from adapting its relief to the state of facts existing at the time of the entry of the final decree. It is for the interests of the parties as well as of the public that there should be an end of litigation, and inasmuch as the parties hereto seem to have been fully heard and the prayers of the bill are broad enough to include the relief asked for, there is no ground for objection to including in the decree an order for the payment of all instalments of money due up to the time of its entry. *Randel v. Brown,* 2 How. 406, 423, 11 Lawy. Ed. 318; *Kilbourne .v. Supervisors,* 137 N. Y. 170, 178, 33 N. E. 159."

Therefore the court was fully warranted in ordering the payment of the three instalments of interest which had fallen due, the only error committed by the court in that behalf being referable to the improper date from which the interest is to be computed. While the court adjudged as due the instalments of interest and ordered their payment, the effect of such order in no manner deprived the plaintiffs of their remedy to resort to mortgage foreclosure proceedings in order to obtain satisfaction of their legitimate claim. If the effect were otherwise, a court of equity in decreeing specific performance would deprive a party to the contract of one of his essential rights, which became his by virtue of the very terms of the contract. Therefore, notwithstanding the order of the court directing the payment of

the instalments due, plaintiffs still retained their equitable rights to enforce payment by the remedy of foreclosure. Under the view as thus expressed, the findings and judgment should have provided that upon the payment of these instalments of interest in accordance with the direction of the court, such payments should be indorsed upon the note in order to evidence their payment.

In its conclusions of law the court directed the defendant to pay interest upon instalments of interest from the time they became due. In so ruling the court committed error. It is argued by plaintiffs' counsel that in declaring specific performance the court should place the parties substantially in the same position that they would be in provided the contract would have been consummated in accordance with its terms. Had the contract in express terms, as is required under the provisions of the statutes, provided for compound interest, no practical difficulty can be perceived why a judgment such as was decreed in the instant case with respect to compound interest should not be entered. However, assuming that the form of mortgage outlined by the court is a proper form of mortgage, plaintiffs, upon failure to pay the interest, in order to obtain full relief would have been authorized to declare the whole amount of principal and interest due, and they would then be entitled to proceed with foreclosure proceedings and obtain a judgment, but in such an event judgment could only have been obtained at the end of the litigation instituted, and interest would then accrue upon the entire judgment, including the instalments of interest, which would from that time on, to all legal intents, become a part of the principal. On the other hand, under the provisions of the statutes the plaintiffs might have brought foreclosure proceedings for failure to pay instalments of interest immediately after such instalments became due. In either event the time when plaintiffs would be, entitled to interest upon these instalments would rest in mere speculation and uncertainty. By this it is intended to

Cutter v. Greene, 185 Wis. 163.

make clear that under the very terms of the contract itself it was not contemplated that interest should be computed upon interest before judgment, and, it being impossible to fix any date or dates certain from which such interest can be legally computed, it was error on the part of the court to order and direct the payment of interest upon instalments of interest which became due. A court of equity will enforce the contract as it exists, and in such enforcement will direct that only which is reasonably certain and which is practicable.

Defendant's counsel complain that the form of mortgage outlined by the court is not the one which the parties intended by the contract. The contract provides that the notes shall be secured "by first purchase-money mortgage on said premises," and that "said mortgage shall contain the so-called mortgage tax clause, requiring the mortgagor to have the said property and the said mortgage assessed together." Plaintiffs contend that the form of mortgage contemplated by the parties is the usual and ordinary form used in the state of Wisconsin where transactions of a similar nature are entered into, and that the form provided for by the findings and the judgment constitutes such usual and ordinary form. On the other hand, defendant contends that by such contract the statutory form was intended. No evidence was introduced upon the trial with respect to the usual and ordinary form of mortgage in use in this state, and the court therefore took cognizance and judicial notice of such usual and ordinary form. The court resorted to its own knowledge and experience in the matter. No suggestion was made at the trial by the defendant that the form adopted was not the usual and ordinary form, and no application was made to the court to use any other form. The form of mortgage actually adopted is the identical form with which the profession in general is familiar and which is generally in use under similar circumstances. It contains the tax clause referred to in the contract, and the option

clause under which the plaintiffs may elect, upon the failure of the defendant to pay any instalments of principal or interest as they become due, to declare the whole amount due. Under the facts as thus disclosed, we are forced to the conclusion that the defendant tacitly assented to this form of mortgage, and that the form as so decreed is the proper form and the one contemplated by the parties under the terms of the contract.

In fixing the dates when the notes should become due, leaving out of consideration the error committed by the court with respect to the time as of which specific performance should be decreed, the court, evidently by an oversight, committed error. This is conceded by plaintiffs' counsel. The contract provides that the notes shall become due on *or before* five years from the dates thereof. While defendant's counsel broadly and generally excepted to the court's conclusion of law in that behalf, such exception should have been specific; and before judgment the attention of the court should have been called to this error, in which event there can be no doubt that it would have been quickly and readily corrected. The findings and judgment will therefore be amended in accordance with the actual terms of the contract itself upon the subject.

Finally, the defendant contends that the decree herein should have provided for a conveyance to the North Shore Realty Company, the corporation designated by the defendant as the party to whom the deed should run. It is undisputed in the evidence that after the abstract had been so remedied that it became a good and merchantable one, the plaintiffs tendered their deed running to the North Shore Realty Company, which deed the defendant refused to accept. The plaintiffs therefore offered and tendered a full compliance on their part. Defendant's counsel argue that in any event specific performance should have been decreed requiring the execution of a deed to the Realty Company, and in the event of its failure to accept or to comply with

the contract, then, and then only, specific performance should be decreed against the defendant. The contract upon which this action is based was entered into solely by the parties to this action. Ordinarily a court of equity will decree specific performance in accordance with the terms of the contract of the parties. In the instant case, however, the defendant expressly refused on the 26th day of July, 1922, to accept the tendered deed to the Realty Company. During the entire interval between July 26, 1922, and the commencement of the action herein, the sole objection of the defendant to accept a deed was based upon the existence of the Godar tenancy and the difference between the parties as to the time of consummation. In his answer the defendant expressed his readiness, ability, and willingness to perform. In his proposed findings of fact, in a number of instances, he proffered specific performance as to himself. Under these circumstances, particularly in view of the fact that the Realty Company was not a party to the suit, the court was fully warranted and justified in entering the decree against the defendant himself. In arriving at this conclusion we have also taken into consideration the fact that the defendant is the president of the Realty Company and manages and controls it, which leads to the logical inference that the provision in the contract under which the deed is required to be executed either to the defendant or to any one whom he might designate was inserted for the defendant's benefit, making him at all times the real owner, and the Realty Company the holder of the title for convenience.

*By the Court.*—The findings of fact and conclusions of law of the trial court and the judgment entered are hereby modified in accordance with the foregoing opinion, and the judgment as so modified is affirmed, with costs in favor of the plaintiffs.