Argued at Pendleton October 27; affirmed December 7, 1937

# LANE *v.* BROTHERHOOD OF LOCOMOTIVE ENGINEMEN & FIREMEN

(73 (2d) 1396)

*C. R. Eberhard*, of La Grande (Cochran & Eberhard, of La Grande, on the brief; Harold C. Heiss and Russell B. Day, both of Cleveland, Ohio, of counsel), for appellant.

*H. L. Hess*, of La Grande (Green & Hess, of La Grande, on the brief), for respondent.

BEAN, C. J. It is admitted that plaintiff's claim was properly filed, that the same was denied by the general secretary and treasurer of defendant society, and that defendant duly exhausted all remedies of appeal within the order. The testimony shows that he was a strong able-bodied man when he became a member of the defendant Brotherhood; that he has not been able to and has not performed any work of any nature for

remuneration or profit since May 7, 1932, and has done no work whatsoever since that time, and that for the past four years he has been able to get around only by the use of crutches, either in or out of the house.

The testimony tended to show that plaintiff was totally and permanently disabled since the time of said accident, to such an extent as to entitle him to the benefits claimed, as provided in the constitution and by-laws of the order. Many engineers, firemen and other workmen of the O.-W. R. & N. Company, and their wives, relatives, and other witnesses, were called, who testified to plaintiff's serious condition. Dr. C. S. Moore, O.-W. R. & N. Company physician in charge of the case practically at all times, Dr. A. L. Richardson and Dr. C. E. Branner testified as to his permanent and total disability. We find no evidence on the part of defendant that an examination of plaintiff was made by any physician for the defendant society. Defendant introduced no testimony to show that the plaintiff had not been totally and permanently disabled, within the provisions of the constitution and by-laws of the order, since his injury on May 7, 1932.

The challenge of the defendant to plaintiff's right of recovery made at the trial of the case was, first, that it was a condition precedent to the right of recovery that the general secretary and treasurer must find that plaintiff was totally and permanently disabled, and that, having found against the plaintiff, that ended the matter, although the constitution and by-laws provide for an appeal from these rulings to higher tribunals within the order, and, second, if this was not a condition precedent, then that provision of the by-laws, which provided that the decision of the board of directors was final, would be binding upon the plaintiff.

Article 17, section 7 (a) of the constitution of the order, provides:

"No member or subordinate lodge of the Brotherhood shall resort to the civil courts to correct or redress any alleged grievance or wrong, or to secure any alleged rights from or against any member, subordinate lodge or the organization, until such member or lodge shall first have exhausted all remedy by appeal, provided by the laws of the Brotherhood for the settlement and disposition of any such rights, grievances or wrongs."

Provision is also made for the time for an action to be commenced by the member. In Article 8, section 25, we read:

"Any and all right of action arising under any claim for disability benefit allowance in this department shall be absolutely barred unless suit is commenced by the member, or on his behalf in some court of competent jurisdiction within six (6) months of notice of the final rejection of the claim by the Board of Directors. A notice of such rejection mailed to the last known post office address of the member shall be sufficient notice under this section."

It will be seen that the contention of the defendant is that the officers of the order should pass upon the claim of the plaintiff, and that their findings should be final and conclusive.

Strange as it may seem, at first blush there is a conflict of authority, or an apparent conflict of authority, on this question. In the Annotations in 51 A. L. R. at page 1421, we read, in regard to the rule that a provision, making the decision of officers or tribunal of an association final, is invalid, as follows:

"There is a decided conflict of authority on the question of the validity of provisions of the constitution, by-laws, or contracts of a mutual benefit asso-

ciation undertaking to make conclusive decisions of its tribunals or officers directly upon claims for benefits. What seems, however, to be the weight of authority holds that such provisions are contrary to public policy and void, and so will not preclude either the member, in case of a claim for disability or sick benefits, or his beneficiary or representative, in case of a claim for death benefits, from resort to the civil courts, if by its contract the association assumes an absolute legal obligation to pay the benefits in a certain event, and does not merely engage to pay such benefits as may be awarded by its officers or tribunals."

■ *Employee's Benefit Association of the Calumet & Arizona Mining Co. v. Johns,* 30 Ariz. 609 (249 P. 764, 51 A. L. R. 1414), is to the effect that any by-law of an insurance association, which provides that in case of dispute as to whether property rights have vested in policies issued by it, the final and unappealable decision as to such rights shall be vested in the association or its officers or business representatives exclusively, is void as against public policy. Article 8, section 18, states that if a claim has been disapproved by the officer and the applicant is dissatisfied he shall first exhaust his appeals within the order and give notice of bringing action, and it is clearly implied from the language used, if not expressly stated, that plaintiff has a right to apply to the courts. This view is strengthened by the provisions of the beneficiary certificate, as follows:

"All rights of action by the beneficiary upon this certificate shall be absolutely barred * * * from maintaining action upon this certificate by reason of any physical injury unless he make proof of such physical injury or bodily ailment, as may be required by said constitution within six months from the time when said physical injury or bodily ailment may have occurred. Any action under this certificate, either by

the aforesaid member or the beneficiary designated herein, shall be absolutely barred unless such action shall be commenced in some court of competent jurisdiction within six months from the final rejection of the claim.''

■ The provision of the certificate that a decision of the supreme court of the order shall be final and conclusive is construed to mark the distinction between the effect of the decision of the supreme court of the order and that of its other courts and not to exclude the jurisdiction of legal tribunals. In other words, the findings are final as far as the officers and members of the order are concerned: *Gilroy v. Supreme Court I. O. O. F.,* 75 N. J. L. 584 (67 Atl. 1037, 14 L. R. A. (N. S.) 632, 636) ; *Burlington Voluntary Relief Dept. v. White,* 41 Neb. 547, 551 (59 N. W. 747, 751, 43 Am. St. Rep. 701) ; *Fraternal Aid Ass'n v. Hitchcock,* 121 Ill. App. 402; *Ry. Pass. etc. Conductors Mut. Aid Ass'n v. Robinson,* 147 Ill. 138 (35 N. E. 168) ; *Grimbley v. Harrold,* 125 Cal. 24 (57 P. 558, 73 Am. St. Rep. 19).

■ The certificate upon which this action is based is in effect a contract of insurance: *Supreme Lodge, etc. v. Raymond,* 57 Kans. 647 (47 P. 533, 535, 49 L. R. A. 373).

■■ It is shown by the certificate that ''The Acceptance of This Certificate by the aforesaid member shall constitute an acknowledgment upon the part of said member that he agrees to each and every condition named herein.'' This clause seems to make the acceptance of the certificate an integral part of the contract of insurance. As we understand the record, the certificate was delivered and accepted at La Grande. The final consummation of the contract of insurance includes both the delivery of the policy and its acceptance by the insured. The applicant has a right to reject the

policy if it does not conform to the agreement of the parties. Until delivery or acceptance, either express or by inference or implication, the contract is not finally executed, although it may be so far assented to as to give a right of action thereon. Where a contract of insurance is susceptible of two constructions and there is a doubt as to its true meaning, then it should be construed most strongly against the insurer: *Stringham v. Mutual Ins. Co.,* 44 Or. 447, 458 (75 P. 822) ; Kerr on Insurance, 65.

■ The weight of authority is to the effect that provisions in the constitution or by-laws making conclusive decisions of officers or tribunal of the order are void: 51 A. L. R. 1420, 1421; 45 C. J. 266, §§ 206, and 270, § 209; 7 C. J. 1074, § 32.

We incline toward the rule indicated in 51 A. L. R., p. 1421, above set forth, and hold that the plaintiff had a right to maintain an action in the courts of this state. We doubt if a fair construction of the certificate and constitution in question indicates that the decision of the tribunal or officers of the Brotherhood of Locomotive Enginemen & Firemen is final and conclusive. If so construed, we think such provisions are contrary to public policy and void.

Stripped of some verbiage, the constitution provides, in substance, that if a member is totally and permanently disabled, with certain exceptions, he shall receive $50 per month for each calendar month from the date the application is received at the Grand Lodge office, if he is in good standing and is adjudged by the general secretary and treasurer to be totally and permanently disabled, as provided in article 8, section 23. Otherwise, as provided in section 18 of that article, if the claim has been disapproved by the general secretary and treasurer and the applicant is dissatisfied,

he can bring an action against the Brotherhood after exhausting all his remedies by appeal provided for by the laws of the Brotherhood, after giving notice of bringing such action.

The majority rule laid down in 51 A. L. R., above referred to, is buttressed by a wealth of decisions, among which are: *Supreme Council, O. C. F. v. Garrigus*, 104 Ind. 133 (3 N. E. 818, 54 Am. Rep. 298); *Supreme Council, O. C. F. v. Forsinger*, 125 Ind. 52 (25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196); *Supreme Council, C. B. L. v. Grove*, 176 Ind. 356 (96 N. E. 159, 36 L. R. A. (N. S. 913); *Lewis v. Brotherhood Acc. Co.*, 194 Mass. 1 (79 N. E. 802, 17 L. R. A. (N. S.) 714); *Whitney v. Nat. Masonic Acc. Ass'n*, 52 Minn. 378 (54 N. W. 184); *Daniher v. Grand Lodge, A. O. U. W.*, 10 Utah 110 (37 P. 245). See also *Supreme Lodge v. Raymond*, supra.

As to the ruling in the cases holding that provisions, making decisions of officers or tribunal of an association final, are valid, see 51 A. L. R. 1425. *Railway Pass. & F. C. Mut. Aid & Ben. Ass'n v. Robinson*, 147 Ill. 138 (35 N. E. 168), is frequently cited as a leading authority in support of the contrary rule, but the decision against conclusiveness rests upon a construction of the provision. In many of such cases the constitution or certificate does not fix a definite amount like $50 per month, but it depends upon the benevolence of the society or the members thereof.

The defendant contends that the case should be decided according to the rules announced in the state of Ohio. We find that the cases in Ohio cited in support of the rule that provisions, making decisions of officers or the tribunal of an association final, are invalid, are listed in 51 A. L. R. 1421, as follows: *Baltimore & O. R. Co. v. Stankard*, 56 Ohio 224 (46 N. E.

577, 49 L. R. A. 381, 60 Am. St. Rep. 745); *Myers v. Jenkins*, 63 Ohio 101 (57 N. E. 1089, 81 Am. St. Rep. 613); *Zanesville Lodge v. Fluharty*, 8 Ohio App. 1. The cases in that state upholding the rule that provisions, making such decisions final, are valid, as shown in the annotations in 51 A. L. R. 1426, are as follows: *Cincinnati Lodge, I. O. O. F. v. Littleburg*, 8 Ohio Dec. Reprint 194, 6 Ohio Wkly. Law Bul. 237; *Baltimore & O. R. Co. v. Stankard*, supra. It would not be of substantial benefit to compare the decisions supporting the rule announced and those against it. We may as well refer to 51 A. L. R., supra.

In 32 C. J. 979, § 8 (B), cited by defendant in support of his contention that the contract of insurance was made in the state of Ohio, we read:

"* * * However, the place where the application is accepted by insurer does not necessarily determine the place of the contract; this may be determined by the place where the policy is delivered to insured and accepted by him." Citing a long list of authorities in Note 60.

We are in favor of a rule announcing the invalidity of stipulations making decisions of tribunals of an association conclusive where parties have by a contract in advance provided that such decisions should be final and attempted to oust the courts of jurisdiction of an action. Under the constitution all the courts are open and every person should have a remedy in due course of law for an injury done him in his lands, goods, person or reputation.

Article 7, section 8 (a) of the order's constitution provides that there shall be established and maintained a fund known as the disability fund. Article 7, section 8 (c), set forth in defendant's answer, provides that members paying monthly assessments into the fund

as long as they remain in good standing in the beneficiary or mutual departments "shall be entitled to the benefits set out in Art. 8, Sec. 23, under the conditions regulating their payment, * * *". By article 7, section 8 (e) it is provided: "Out of this fund shall be paid all claims for disability allowance, as provided in Art. 8, Sec. 23, Par. (d)." A different provision seems to be made for consumptive allowance, as provided for in article 8, section 23, paragraphs (d) and (e). When application for claims for allowances have been filed and approved, that is, claims for consumption, an allowance must be made, and it is payable in accordance with the provisions of the constitution. This provision apparently causes some confusion with the other provisions for definite amount to be paid.

■ Mr. Chief Justice Burket, in the case of *Baltimore & O. R. Co. v. Stankard,* supra, said:

"Such contracts are in their nature only applicable to cases wherein it becomes necessary to fix some fact, leaving the question of law to be settled by the courts upon proper proceedings. The ultimate question to be determined—the liability or nonliability of the parties —must be left to the courts. The construction of a written contract is a question of law for the court, and a provision in the contract that the construction of such contract, or the meaning of rules or regulations, shall be finally determined by some designated person, is void, because the court can not be robbed of its jurisdiction to finally determine such questions. In insurance and other like cases, where the ultimate question is the payment of a certain sum of money, certain facts may be fixed by a person selected for that purpose in the contract, but the ultimate question as to whether the money shall be paid or not, may be litigated in the courts, and a stipulation to the contrary is void." See also *Shipe v. Norfolk & Western Ry. Co.,* 51 Ohio App. 361 (5 Ohio Op. 292, 1 N. E. (2d) 174).

This quotation seems to be favorable to the plaintiff. The case of *Shipe v. Norfolk & Western Ry. Co.,* supra, is one where the plaintiff Shipe sought to recover benefits growing out of an accident sustained by him in the course of his employment as a member of the relief and pension department maintained by the railroad company for the benefit of employees. After he was paid benefits for some time, the medical examiner of the relief department declared plaintiff able to resume employment, and therefore not entitled to further benefits. No regular appeal was taken from this finding, as we understand the decision, and it was held to be final. The case is entirely different from the one in hand.

While some of the opinions in the state of Ohio are not in accord with what is termed the majority rule, when we refer to the case of *Baltimore & O. R. Co. v. Stankard,* supra, quoted in *Shipe v. Norfolk & Western Ry. Co.,* supra, we think the ultimate question to be determined in the case at bar is the liability or non-liability of the defendant Brotherhood, which, as there stated, must be left to the court. In the present case the benefit certificate and the provisions of the constitution of the order must be construed. Chief Justice Burket says in the Stankard case that a provision in the contract, that the construction of such contract or the meaning of rules or regulations shall be finally determined by some designated person, "is void", because the court cannot be robbed of its jurisdiction to finally determine such questions. It is not necessary, in this case, to have the amount to be paid plaintiff fixed. That amount is fixed by the constitution at $50 per month. The decision of the tribunal, or the officers of the order, which it is claimed by defendant is final, is a determination of the whole case, and if the con-

tention of defendant is granted it would determine the ultimate question in the case; that is, the liability or nonliability of the defendant Brotherhood. To this contention we cannot accede.

Anent the decisions in the state of Ohio, no longer ago than 1935 the supreme court of Arkansas in the case of *Brotherhood of Locomotive Firemen and Enginemen v. Simmons,* 190 Ark. 480 (79 S. W. (2d) 419), at page 423, had the following to say:

"If it be conceded, as claimed, that the brotherhood was formed under the laws of Ohio and that the decisions of the courts of that state, construing and upholding the validity of any particular part of its constitution, is binding upon this court under the full faith and credit clause of the United States Constitution, we are of the opinion that the case cited has not decided the questions presented in the case at bar and is, therefore, not conclusive of the contention of the appellant. It does not appear that the provisions of the constitution of Independent Order of Odd Fellows, relating to appeals, are the same or similar to those here involved. It is clear that they are different and, in addition to granting the right of appeal, map out a course of procedure whereby that right may be made effective."

The supreme court of Arkansas further held in that case:

"There is a further and vital distinction. In the cited case the claim for liability was against the local lodge, and the order, itself, as such, was not responsible. From the appellate tribunal, members of the local lodge against which the claim was made were excluded, so that the claimant might present his cause to a disinterested tribunal. In the case at bar it is the brotherhood against which the claim is made and not the local lodge, and it is its principal officers who are clothed with the authority to hear and determine the validity of the claim. No principle is more just or of wider application than

'no man can be a judge in his own cause,' and the provisions just noted are violative of that principle." See also *Hassell v. Brotherhood of Locomotive Firemen and Enginemen,* 126 Tex. 256 (87 S. W. (2d) 468); *Brotherhood of Locomotive Firemen and Enginemen v. Hassell* (Tex.), 93 S. W. (2d) 789.

Insofar as we see, under the decisions of the courts of the state of Ohio, this constitution and certificate, under their peculiar wording, would necessarily have to be construed as recognizing a right of appeal to the courts.

The rule laid down in 45 C. J. 270, § 209, is practically the same as in 51 A. L. R. We here read:

"Effect of stipulation. It also is generally held that, where the remedies within the order have been exhausted, recourse to the courts cannot be precluded by a stipulation that the decision of the society's own tribunals shall be final and conclusive, although some authorities have held that such stipulations, in the absence of fraud, make the decisions of the order as to the insurance binding on the members and their beneficiaries." *Employees' Benefit Ass'n of the Calumet & Arizona Min. Co. v. Johns,* supra; *Kempton Lodge No. 482 v. Mozingo,* 180 Ind. 566 (103 N. E. 411); *Carey v. Switchmen's Union of North America,* 98 Minn. 28 (107 N. W. 129).

■ ■ As to the question of where the contract was made, the evidence shows that the applicant was a citizen of Oregon and was initiated into Lodge No. 348, Brotherhood of Locomotive Firemen & Enginemen of Union County, Oregon. It appears to be the rule that where the parties to an insurance contract are in different jurisdictions, the place where the last act is done, which is necessary to the validity of the contract, is the place where the contract is entered into: *McElroy v. Metropolitan Life Ins. Co.,* 84 Neb. 866 (122

N. W. 27, 23 L. R. A. (N. S.) 968, 19 Am. & Eng. Ann. Cas. 28). The benefit certificate was signed and issued at Cleveland, Ohio, and sent to the secretary at La Grande, where it was delivered to plaintiff. The dues were collected at La Grande. It appears that the receipt and acceptance of the benefit certificate by plaintiff was at La Grande. We are not satisfied, however, that we are applying a different rule from that applied, as shown by the opinions of the state of Ohio.

In *Stringham v. Mutual Ins. Co.*, 44 Or. 447, at page 455, we read:

"It is said: 'The policy of insurance is the final contract between the parties, and the effect of its acceptance is to supersede all preliminary agreements in respect to insurance.:' 16 Am. & Eng. Enc. Law (2d Ed.) 856. So that the final consummation of the contract of insurance includes both the delivery of the policy and its acceptance by the insured. The applicant has a right to reject the policy if it does not conform to the agreement of the parties for its execution, and, until delivery and acceptance, either expressly or by inference or implication, the contract is not finally executed, although it may be so far assented to as to give a right of action thereon."

In 14 R. C. L. 893, 894, § 69, it is stated:

"The construction of a policy of insurance, depending on questions of general commercial law, is a matter on which courts of the United States are at liberty to exercise their own judgment, and are not bound to accept the decisions of the courts of the state in which the contract was made."

In *Patton v. Babson's Statistical Organization, Inc.*, 259 Mass. 424 (156 N. E. 534), we find the following:

"It is a general rule that an agreement purporting to oust the courts entirely of their jurisdiction is void. Rowe v. Williams, 97 Mass. 163; Pearl v. Harris, 121

Mass. 390; White v. Middlesex Railroad, 135 Mass. 216; Lewis v. Brotherhood Acc. Co., 194 Mass. 1, 79 N. E. 802, 17 L. R. A. (N. S.) 714; Bauer v. International Waste Co., 201 Mass. 197, 203, 87 N. E. 637. See, also, London Tramways Co. Ltd. v. Bailey, 3 Q. B. D. 217; Hope v. International Financial Society, 4 Ch. D. 327.''

In *Employees' Bene. Ass'n of Calumet, etc. Co. v. Johns,* supra, the syllabus reads:

''By-law of mutual benefit association, providing that decision of its board of trustees on appeal shall be conclusive, is void, as against public policy, as applied to controversy over property rights under policies, and does not preclude representative of member, for whose death financial benefits are sought, and who has expressly agreed to accept such by-laws, from suing in the courts.''

In *Supreme Council v. Grove,* supra, we read:

''The reason of the rule lies deeper than the mere matter of power to submit to arbitration, in the fact that it is entirely inconsistent with, and repugnant to, all notions of justice, that one should be an arbitrator in his own case, and that the laws of the land should be superseded, and the courts ousted of jurisdiction to interfere and enforce them, by the very contract which is in question.''

 Defendant assigns error in the court's giving instructions to the jury and contends that instructions No. 1 and No. 20½ are inconsistent and conflicting. Instruction No. 1 reads in part as follows:

''* * * I instruct you that if you believe from a preponderance of the evidence that the plaintiff became permanently and totally disabled, as provided in Article 8, Sec. 23 (a) of the Constitution and By-Laws of said defendant society, as a result of accidental injuries sustained by him on the 7th of May, 1932, or partially as a result of said injuries, and that he had fully complied with all the terms and conditions of his

membership, entitling him to disability, including the payment of his dues and assessments, and that within six months from the time he acquired knowledge that he had sustained permanent total disability, and on or about the 3rd of October, 1933, he notified the General Secretary and Treasurer of the defendant, through the Recording Secretary of plaintiff's lodge, of said accident and injury, and claimed indemnity as a result of alleged permanent total disability on his part, and that said claim was disapproved by said General Secretary and Treasurer, and thereafter, and within the time provided by the Constitution and By-laws for appeal, the plaintiff filed his notice of appeal and perfected his appeal from the decision of said Secretary and Treasurer disapproving said claim, to the International President of said Association, and that thereafter said International President disaffirmed said claim of the plaintiff, and within the time provided for appeal from the decision of the International President in such matters, the plaintiff duly filed his notice of appeal from said decision of the International President to the Board of Directors of said Association, which Board of Directors disallowed said claim, and that the defendant exhausted all remedies by appeal, provided by the laws of the Brotherhood,—and that thereafter, before bringing this action, namely on or about the 21st day of December, 1935, or within thirty days after said final rejection by the Board of Directors, gave notice in writing of his intention to bring this action, and within six months from the final rejection of said claim filed this action,—then your verdict must be for the plaintiff Walter L. Lane.''

By instruction No. 20½ the court instructed the jury as follows:

''Plaintiff relies in his amended complaint upon the accident of May 7, 1932, from which he sustained an accident or injury resulting in total and permanent disability, to such an extent as to wholly and permanently prevent him from engaging in any occupation, profession or business, or from performing or

directing any work for remuneration or profit, as a result of falling violently on top of a water tank of the railroad company while plaintiff was pulling down a water spout from a water tank to take water on the engine, whereby he was injured in his body, his back, his spine, his nervous system, and resulting in spondylitis and permanent injury to both sacroiliac articulations, both of same being chronic and permanent. I instruct you that the plaintiff must prove by a preponderance of all the evidence in this case that the condition of total and permanent disability which he alleges in his amended complaint he has sustained, was sustained by reason of such accident, at said time and place, and if he has failed to make such proof by a preponderance of the evidence, or if the evidence on said issue is equally balanced, your verdict must be for the defendant.''

The criticism made by defendant of instruction No. 1 is in regard to that part of the instruction, where the court charged the jury if they believed from the evidence that plaintiff became permanently and totally disabled, as provided in Article 8, section 23 (a) of the constitution and by-laws of the defendant society, as a result of the accidental injury sustained by him on the 7th day of May, 1932, which reads, ''or partially as a result of said injuries''.

Article 8, section 23 (a) provides that total and permanent disability shall be construed to mean such a state of bodily incapacity as shall wholly and permanently prevent a member from engaging in any occupation, profession or business or from performing or directing any work for remuneration or profit, but shall not include claims resulting solely from old age or consumption of the lungs. It is therefore not necessary for plaintiff, under the constitution, to have become totally and permanently incapacitated on the 7th day of May. He may have been, on account of his duties

as an engineer or fireman, affected to a certain extent by the jar of the engine, but not sufficiently to be totally incapacitated, and the accident on May 7, 1932, rendered him totally and permanently disabled. In other words, the date is not absolutely material. The case in hand is different from an action for personal injury where a certain accident happens and negligence is alleged. It is positively proven by the testimony in the case that the plaintiff, at the date mentioned, became totally and permanently disabled and has so remained since.

The two instructions above quoted, one of which was presented by defendant, fairly informed the jury in regard to the disability of the plaintiff. The main injury, as shown in the trial of the case, was that which occurred on May 7, 1932. It was necessary for him to have been disabled after the issuance of the benefit certificate, but it was not absolutely necessary that the injury should occur on any particular day.

Defendant also objected and excepted to instruction No. 20 for the reason that it is not within the issues and permits recovery for months not covered by the amended complaint. The certificate together with the pertinent sections of the constitution are pleaded in the complaint, and it is shown that he would be entitled to $50 per month after being totally and permanently disabled.

In *Howard v. Benefit Association of Ry. Employees*, 239 Ky. 465 (39 S. W. (2d) 657), in 81 A. L. R. 375, it is shown, upon the repudiation by an insurer of its obligation under a health insurance policy to make stipulated monthly payments, so long as the insured shall continuously suffer total disability, the insured may not treat the entire contract as breached and sue for gross damages based on alleged expectancy of life. In the Annotations to this case, at page 392 of 81 A. L.

R., in regard to installments accruing after commencement, but before termination, of action, we learn that where the contract is for the payment of a monthly indemnity the insured cannot recover more than the amount of monthly installments due at the time the action is begun; benefits accruing after the commencement of the action are not recoverable: *Commercial Casualty Ins. Co. v. Campfield*, 243 Ill. App. 453. In the case of *Atkinson v. Railway Employees Mut. Relief Soc.*, 160 Tenn. 158 (22 S. W. (2d) 631), it was stated that, in an action at law for breach of a contract of insurance, payable in weekly or periodic installments, only those installments in default at the time suit was brought may be recovered. This rule is supported by the court upon the theory that, while the contract held by the insured constituted an entire contract, the obligation resting upon the insurer was severable; that a right of action accrued to the insured for each benefit installment payable and in default. It is noticed in that case that the insured could not recover installments accruing after the commencement of the action because he had filed no pleading to embrace such installments. Recovery of installments accruing subsequently to the commencement of the action was also denied in *Robinson v. Exempt Fire Co.*, 103 Cal. 1 (36 P. 955, 24 L. R. A. 715, 42 Am. St. Rep. 93), where the court said:

"The idea upon which the lower court seems to have proceeded and the contention of defendant is that the contract sued on is entire, and not severable; that it imposed a duty upon defendant to pay benefits so long as plaintiff remained sick and disabled; that, the defendant having made default before suit, this default worked a breach of the entire contract; and that all the damages accruing subsequently from that sickness must be deemed to have originated in the default, to have proximately resulted therefrom, and can be re-

covered in the action although accruing subsequently to its commencement. But we think respondent mistaken as to the character of the contract between the parties. The contract is not entire in the sense used by respondent. It is, to the contrary, in its nature severable * * *''

Also in the case of *Bonslett v. New York L. Ins. Co.,* (Mo.) 190 S. W. 870, where the plaintiff, in a petition declaring upon a life insurance policy payable in annual installments, asked judgment for only the amount of installments due at the time of the commencement of the action, but in reply asserted that certain installments had fallen due after the filing of the petition, the court held that the inclusion in the verdict of installments falling due after the beginning of the action was error. In its decision the court said: ''Actions for other installments became maintainable as they fell due.''

In the present case plaintiff filed no supplemental complaint. It will be necessary, therefore, to correct the judgment rendered by the trial court so as to provide for the amount demanded in the amended complaint.

■ Defendant criticizes Instruction No. 3, which refers to the law in the state of Ohio. The gist of the instruction is that the plaintiff has a right of appeal to the civil courts after he has exhausted his remedies of appeal as provided by said fraternal benefit society relative to the tribunals of said benefit society. With this instruction we are in accord. It is the duty of the court to instruct the jury as to the law, and the jury is not required to construe the opinions of courts of another state.

■ Instructions are to be considered as a whole and not by segregated parts in considering objections: *Oregon Box & Mfg. Co. v. Jones Lbr. Co.,* 117 Or. 411

(244 P. 313) ; *Farmers', etc., Bank v. Woodell*, 38 Or. 294 (61 P. 837, 65 P. 520) ; *Mathews v. City of La Grande*, 136 Or. 426 (299 P. 999).

There was no error in overruling the demurrer to plaintiff's complaint. We have carefully examined the charge of the court to the jury. Reference to the benefit certificate and the different provisions of the constitution are necessarily lengthy. However, we think that all in all the case was fairly submitted to the jury, except as noted.

■ Assignment of error No. 6 relates to defendant's motion to strike the allegations of the amended complaint relating to reasonable attorneys' fees, and it is contended that section 46-134, Oregon Code Supplement 1935, being section 1, chapter 355, Laws of 1931, is unconstitutional. A similar question was raised in the case of *Spicer v. Benefit Ass'n of Ry. Emp.*, 142 Or. 574, 590, 591 (17 P. (2d) 1107, 21 P. (2d) 187, 90 A. L. R. 517), where Mr. Justice ROSSMAN remarked that the constitutionality of the Oregon legislation authorizing assessment of an attorney fee has never before been questioned in this court, but its validity has been many times recognized, citing a long list of cases, and he concludes that the 1931 act does not conflict with Article I, section 20, of the Oregon Constitution. We think the question raised has been foreclosed by a large number of decisions in this state.

■ Section 46-134, as amended, provides: "If attorney fees are allowed as herein provided and on appeal to the Supreme Court by the defendant the judgment is affirmed the Supreme Court shall allow to the respondent such additional sum as the court shall adjudge reasonable as attorney fees of the respondent on such appeal." That section further provides that "The

terms of this act shall not apply to any suit or action started or begun prior to the passage of this act.'' This implies, under the well-known rule of construction, that it applies in other cases.

In the Spicer case, as shown at page 592 of the report, the policy of insurance was written prior to the enactment of the 1931 law, and it is there held that the rules of statutory construction strongly favor a prospective interpretation of statutes which affect substantive rights, but when the new statute concerns itself merely with the laws of procedure or remedies, the statute is generally applied to existing rights as well as to those which may accrue in the future. And several cases are cited. In that case the court holds that the statute does not violate Article I, section 10, of the Federal Constitution, nor Article I, section 21, of the Oregon Constitution. See pages 593 and 594.

We hold that the point is not well taken. The plaintiff in this case is entitled to and is awarded attorney's fees upon this appeal in the sum of $150.

We have examined the record and benefit certificate and constitution of the order and the different assignments of error made by defendant and given the matter careful consideration. The testimony in the case and the record is all before us, and, under the provisions of Article VII, section 3, the court will render a judgment, as prayed for in plaintiff's complaint, in favor of plaintiff and against defendant, in the sum of $50 per month from the 31st day of October, 1933, to the time of the filing of the amended complaint in this action to wit, January 5, 1937, being the sum of $1,900, with interest thereon at the rate of 6 per cent per annum, until paid, and the further sum of $500 attorney's fees in the lower court, together with plaintiff's

costs in the lower court, taxed at $65.30, and the further sum of $150 attorney's fees upon this appeal. Under all the circumstances of this case neither party will be allowed costs in this court.

This judgment is without prejudice against plaintiff to maintain action for the $50 per month accruing from and after the commencement of the present action.

The judgment of the circuit court will be modified, as indicated, and affirmed as modified.

ROSSMAN and KELLY, JJ., not sitting.