## MAURICE BAUER *vs.* INTERNATIONAL WASTE COMPANY & others.

Suffolk.     December 1, 1908. — February 26, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Equity Pleading and Practice,* Objection of remedy at law, Decree. *Equity Jurisdiction,* Remedy at law. *Contract,* Performance and breach, Construction, Validity. *Arbitration and Award.*

In a suit in equity, the defense, that the plaintiff cannot maintain his bill because he has an adequate remedy at law, is waived by answering without demurrer to the bill and going to trial on the merits.

A bill in equity which alleges that three of the defendants owe the plaintiff a certain sum of money and have placed in the hands of the fourth defendant funds from which payments to the plaintiff are to be made, that the fourth defendant holds also certain documents belonging to the plaintiff, and that the fourth defendant without justification and illegally is about to render an award under

a certain contract and thereupon to turn over the funds in his hands to the other defendants, sets forth grounds for equitable relief, and will not be dismissed on the objection, properly taken by demurrer, that the plaintiff has an adequate remedy at law, as the law, while affording the plaintiff some relief against such unwarranted action of the defendants, does not afford relief as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.

A contract, not to "engage directly or indirectly in the business of buying cotton waste from any cotton mills in any part of the United States or Canada" during a period named, is not broken by selling cotton waste within the designated territory nor by buying cotton waste there from dealers other than cotton mills.

In a suit in equity to enforce the payment of a certain sum of money by three of the defendants to the plaintiff in accordance with the terms of a certain contract, it appeared that the plaintiff had agreed not to "engage directly or indirectly in the business of buying cotton waste from any cotton mills in any part of the United States or Canada," and that the parties had made a subsequent agreement by which the three defendants agreed to pay the sum of money in question to the fourth defendant for the plaintiff in instalments, so long as the fourth defendant should "rule and decide" that the plaintiff was living up to and performing the covenants of the contract under which the money was to be paid, with a provision that the decision of the fourth defendant should "be final upon the question of said payments." It further appeared that the fourth defendant sent a letter to the other three defendants in which he undertook to "absolve" them from further payments under the contract, saying "I shall at once notify . . . [the plaintiff] and give him a chance to be heard . . . and will then render my decision as to the final determination or continuation of the several agreements between you." Thereupon the plaintiff filed his bill in equity. The judge who heard the case found that the fourth defendant had not rendered a decision. *Held,* that such finding was warranted, that there was nothing in the last agreement which undertook to make a decision by the fourth defendant a condition precedent to a right of action, and that, whether or not an attempt to create such a condition precedent would have been valid, under this agreement any party to it was at liberty to resort to an action or a suit in equity for the settlement of any dispute arising under it, so that the plaintiff by filing his bill in equity elected to decline to proceed further under the arbitration clause of the agreement, which it was within his right to do.

There is no principle of equitable jurisprudence which prevents the court in a suit in equity from adapting its relief to the state of facts existing at the time of the entry of the final decree, including facts which did not exist when the bill was filed, without requiring an amendment by the filing of a supplemental bill, if the prayers of the bill as it stands are broad enough to cover such relief.

In a suit in equity to enforce a contract requiring the payment by the defendant to the plaintiff of a certain sum of money to be paid in equal monthly instalments during a period of three years so long as the plaintiff abides by the contract, if the suit was begun while some of the instalments had not become payable, but before the entry of the final decree the three years during which the monthly payments were to be made have expired, so that the entire sum due under the contract has become payable, and there is nothing to show that the plaintiff at any time during the three years named in the contract failed in the performance of his contractual obligations to the defendant, and if the prayers of the bill are broad enough to cover such relief, the final decree may include an order for the payment of all the instalments of money payable at the time of its entry.

BILL IN EQUITY, filed in the Superior Court on March 1, 1906, seeking the relief described in the opinion.

The case was heard by *DeCourcy*, J., who made a final decree for the plaintiff granting the relief prayed for, and dismissing a cross-bill, which had been filed by the defendant corporation. The defendants appealed from the decree, and the defendant corporation appealed from the decree dismissing the cross-bill. The judge filed a memorandum of findings of fact, the substance of which is stated in the opinion. There was a deposition of the plaintiff, taken in his behalf in England in answer to interrogatories and cross-interrogatories propounded to him, and there also was a report of the evidence by a commissioner.

*E. F. McClennen*, (*A. L. Fish* with him,) for the respondents.

*V. J. Loring*, (*J. H. McDonough* with him,) for the plaintiff.

RUGG, J.   This is a bill in equity, by which the plaintiff seeks to recover from the respondents, the International Waste Company, Samuel E. Lichtenhein and Edward Lichtenhein, money alleged to be due under two contracts and to enjoin the defendant McPherson from rendering a decision as arbitrator, and to compel him to turn over certain funds, checks or vouchers actually held by him under said agreements.

On August 22, 1904, the plaintiff, the defendant company and Samuel E. Lichtenhein made a contract, by which the former entered the employ of said company as manager for a term of years and turned over to it certain contracts held by him. On November 2, 1904, the same three parties executed an agreement, cancelling the earlier one, and the plaintiff became bound to sail for Europe not later than December 1, 1904, to remain away from America for at least three years, and during said time not to " engage directly or indirectly, in the business of buying cotton waste from any cotton mills in any part of the United States or Canada, or be interested directly or indirectly in any such business, including any interest as officer, employee or stockholder in any corporation carrying on said business in any part of the United States or Canada." ' Certain monthly payments were to be made to the plaintiff so long as he abided by this agreement until the full sum of $6,300 was paid. The performance of this contract by the company was guaranteed by Samuel E. Lichten-

hein.   On November 14, 1904, all the parties to this suit made a third contract, by which the plaintiff discharged the said company and Samuel E. Lichtenhein from all liability under the contract of August 22, 1904, and the defendant company, Samuel E. Lichtenhein, Edward Lichtenhein and the Montreal Cotton & Wool Waste Company (which was a designation under which said S. E. Lichtenhein carried on business) agreed to pay to the defendant McPherson or such financial institution as might be designated the sum of $6,300 in instalments so long " as said McPherson shall rule and decide that said Bauer is living up to and performing the covenants as set out in said contract of November 2, 1904, and the decision of said McPherson shall be final upon the question of said payments."   On the 14th of December, 1905, the defendant McPherson sent a letter to all the other defendants, in which he undertook to " absolve " them from further payments under the agreements of November 2 and 14, 1904, and stated, " I shall at once notify Mr. Bauer and give him a chance to be heard . . . and will then render my decision as to the final determination or continuation of the several agreements between you."   The case was heard before a judge of the Superior Court, who found that in May, 1905, the plaintiff " entered the employ of W. Wolf & Sons, partnership of Stuttgart, Germany, and opened for them a branch place of business at Oldham, England, subsequently removed to Manchester.   They were dealers in cotton waste and had a branch house also at Boston, Massachusetts. I find on the evidence that Bauer personally bought no cotton waste since he left the United States and made no sales but one to a dealer or manufacturer in Fall River and another in Pawtucket; both sales of waste bought in Europe.   Wolf & Sons, for whose Manchester branch he was manager, upon the evidence, did not buy any cotton waste from mills in the United States or Canada, but bought from dealers."   He also found that no final decision was made by McPherson as arbitrator previous to the filing of this bill; and entered a final decree for the plaintiff.

The defendants first argue that the plaintiff had a plain, adequate and complete remedy at law, and therefore cannot maintain his bill.   All the defendants save the International Waste Company answered without filing any demurrer and went to

trial on the merits. This was a waiver of any right to raise such objection. *Driscoll* v. *Smith*, 184 Mass. 221. The International Waste Company filed a demurrer but did not appeal from the order of the judge overruling its demurrer. If it be assumed in its favor, however, that the question is open to it, the averments of the bill are sufficient to show ground for equitable relief. It was alleged that McPherson held funds and also a resignation of the plaintiff, his release and a share of his stock in the defendant company. McPherson's letter of December 14, 1905, directed to the other defendants, which stated that a copy would be sent to the plaintiff, also asserted that he would hold the checks in trust which had been sent by the other defendants to him, and that they would draw the low bank rate of interest. At some time he had held the other documents described. Apparently his attitude was such that he would turn these over to the several defendants or some of them, and thereby it was possible that irreparable injury might be done to the plaintiff. There was the further important allegation that the defendant McPherson was illegally and without justification about to proceed to render an award under the terms of the contract. While relief in some form would undoubtedly have been afforded at law to the plaintiff against such unwarranted action, yet it cannot be said that at law there was relief " as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Boyce* v. *Grundy*, 3 Pet. 210, 215, cited in *Rice* v. *Winslow*, 182 Mass. 273, 276. Without discussing the matter further, it is plain that the bill sets forth a cause for equitable relief.

There is no question as to the sufficiency of the evidence to support the findings made by the trial judge. The evidence was substantially all one way. It fails utterly to show that there was any breach of his contract by the plaintiff. The contract bound the plaintiff not to " engage directly or indirectly in the business of buying cotton waste from any cotton mills in any part of the United States or Canada." The judge found that neither the plaintiff nor his employers, Wolf and Sons, bought cotton waste from mills in the United States or Canada. It follows necessarily, from the fact that neither bought, that they did not engage in the business of buying. It is one thing to deal in,

another to sell, and quite a different thing to buy any kind of merchandise. It was only from engaging in the latter branch of business that the plaintiff by his contract precluded himself. Moreover, there is nothing in the contract to prevent the plaintiff, either directly or indirectly, from buying cotton waste generally in the market. The only source of purchase which was prohibited to him was cotton mills. Therefore, he could buy of dealers if he chose to do so. The contract says nothing about selling waste. It only prohibits the purchase. The record is bare of any evidence tending to show that Wolf and Sons bought cotton waste from the owners of cotton mills in the United States or Canada. It was found that the plaintiff made two sales of this material to manufacturers in the United States, but there is no phrase in his contract prohibiting him from doing this. The only business described in his contract is the business of buying cotton waste from cotton mills. Therefore, the expression, " such business " in the contract cannot be stretched to include anything more than the limitation fixed by the earlier description. Inasmuch as neither the plaintiff personally nor the firm for which he worked bought any cotton waste from cotton mills in the United States or Canada during the prohibited term, it is unnecessary to decide whether his employment at a fixed salary, without any percentage or other interest in the business itself, as the manager of a branch at a manufacturing city in England gave him an interest in the business of his employer. See *Smith* v. *Hancock*, [1894] 2 Ch. D. 377; *Gophir Diamond Co.* v. *Wood*, [1902] 1 Ch. D. 950.

It remains to determine what was the effect of the arbitration clause in the agreement. Apparently this was designed to leave to the defendant McPherson the decision of the entire question whether the plaintiff was living up to his contract, and to make the liability of the other defendants wholly dependent upon that decision. In other words, this was an attempt to leave to the arbitrator the decision whether there had been any violation of the agreement with the stipulation that his decision was to be final. This is not an agreement as to some preliminary, subsidiary or ancillary matter in aid of an action at law or a suit in equity, but an attempt to wholly oust the courts of jurisdiction respecting the subject matter. It is settled by a long line of

authorities in this jurisdiction that such an agreement cannot be enforced. *Rowe* v. *Williams*, 97 Mass. 163. *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1, 4. *Miles* v. *Schmidt*, 168 Mass. 339. *Webber* v. *Cambridgeport Savings Bank*, 186 Mass. 314. There is nothing in the agreement which undertakes to make the action of McPherson a condition precedent to any right of action. Without discussing how far such an agreement would be valid, it is enough to say that, under this contract, any party to it was at liberty to resort to an action for the settlement of any dispute arising under it. *Norcross Brothers* v. *Vose*, 199 Mass. 81, 94, and cases cited. The plaintiff by bringing his bill in equity elected to decline to proceed further with the arbitration clause of the contract. This was clearly within his right, and his action in this respect furnishes no ground of complaint to the defendant. *Pearl* v. *Harris*, 121 Mass. 390.

The judge of the Superior Court properly ruled that McPherson had made no finding. His letter of December 14, 1905, plainly was not a decision under the authority attempted to be conferred upon him by the agreement. He expressly states in it that after giving the plaintiff " a chance to be heard " he will then render his decision " as to the final determination or continuation of the several contracts." This language is quite inconsistent with a present decision. It leaves inoperative the earlier part of his letter, which purported to relieve the other defendants from making payments.

After the present suit was brought, but before the entry of the final decree, the three years, during which the monthly payments were to be made, expired, so that the entire sum payable to the plaintiff under the contract had become due. There is nothing in the record to show that at any time during the three years described in the contract the plaintiff failed in the performance of his contractual obligations to the defendants. Hence, no reason is apparent why the plaintiff was not entitled at the time of the entry of the decree to the full amount due under the contract. There is no principle of equitable jurisprudence which prevents a court of equity from adapting its relief to the state of facts existing at the time of the entry of the final decree. It is for the interests of the parties as well as of the public that there should be an end of litigation, and inasmuch as the parties hereto

seem to have been fully heard and the prayers of the bill are broad enough to include the relief asked for, there is no ground for objection to including in the decree an order for the payment of all instalments of money due up to the time of its entry. *Randel* v. *Brown*, 2 How. 406, 423. *Kilbourne* v. *Supervisors*, 137 N. Y. 170, 178. It follows from what has been said that the cross-bill of the International Waste Company was properly dismissed.

The decree is to be so far modified as to include the costs of this appeal, and as modified should be affirmed.

*So ordered.*