**SIDERIUS, INC., Plaintiff,**

v.

**COMPANIA de ACERO del PACIFICO, S. A., Defendant.**

**No. 78 Civ. 281 (VLB).**

United States District Court, S. D. New York.

April 25, 1978.

---

Vincent, Berg, Russo, Marcigliano & Zawacki, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Defendant moves for an order directing plaintiff to proceed with an arbitration already commenced, and dismissing the complaint. The motion is granted.

Defendant Compania de Acero del Pacifico, S.A. ("CAP"), a corporation organized under the laws of the Republic of Chile with its principal place of business in Santiago, Chile, and plaintiff Siderius, Inc. ("Siderius"), a corporation organized under the laws of the State of New York, entered into a commercial contract during 1976, pursuant to which CAP sold and Siderius purchased 5,000 metric tons of cold rolled sheet steel under the following terms: "F.O.B. Huachipato, San Vincente [Chile]." Siderius contracted for the delivery of the steel by ship from Chile to Long Beach, California.

Following arrival of the 5,000 metric tons of cold rolled sheet steel in Long Beach, California, Siderius objected to the quality and condition of the goods. In an effort to resolve this commercial dispute, on March 29, 1977, CAP and Siderius entered into a written agreement in Santiago, Chile to submit the question of the quality and condition of the steel to arbitration before a Chilean arbitrator (the "submission agreement"). The submission agreement provides in pertinent part:

> On the basis of the contract for purchase and sale of 5,000 tons of cold rolled steel, entered into between CAP and Siderius, the purchaser Siderius has objected to the quality and condition of the merchandise delivered by CAP. It is agreed that the claim of Siderius shall be submitted for decision by Marcial Mora Wackenhut in the capacity of arbitrator of law, in accordance with the rules of the Code of Civil Procedure of Chile.

. . . . .

Pursuant to this submission agreement, Siderius commenced arbitration proceedings in Chile by the filing of a complaint dated May 1, 1977, and CAP joined issue by the filing of an answer dated July 7, 1977. Additional proceedings in the arbitration have already taken place. CAP is not in default in the Chilean arbitration proceedings.

The claims asserted by Siderius in its complaint herein are the same as those which are now before the Chilean arbitrator and involve the quality and condition of the same 5,000 metric tons of steel. Thus the complaint herein, which was filed January 23, 1978, pertains to the same coils of cold rolled steel which plaintiff alleges were supplied to it by defendant pursuant to contract. When received the coils were allegedly in "a heavily rusted and damaged condition." The proximate cause of the damage, according to the complaint, "was the breach of implied and expressed warranties of quality, merchantability, fitness for ordinary purpose and fitness for particular purpose by defendant."

Thus plaintiff seeks to litigate in this court an international commercial dispute which the parties specifically agreed to submit to arbitration in Chile and as to which arbitration proceedings are already well under way. Both the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, to which the United States acceded on September 30, 1970,[1] and the amendments to the United States Arbitration Act, 9 U.S.C. § 201 et seq., enacted to implement and enforce the Convention, foreclose resort to this court in such circumstances.

Article II, Section 1 of the Convention provides that each contracting state "shall recognize an agreement in writing[2] under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in respect of a defined legal relationship . . . concerning a subject matter capable of settlement by arbitration." The United States has limited the scope of Article II, Section 1 by adopting the reservation that the Convention applies only to arbitration agreements "arising out of legal relationships . . . which are considered as commercial . . . ." Art. I, Sec. 3.

The submission agreement between plaintiff and defendant provides for arbitration of a dispute as to the quality and condition of goods purchased, a matter clearly capable of resolution by arbitration. Moreover, this dispute arose out of a classic commercial relationship—one involving the purchase and sale of goods by two corporations. Hence the submission agreement is an arbitration agreement within the meaning of the Convention that this court is required to recognize.

The Convention specifically provides for the relief sought by defendant in this motion. Article II, Section 3 states as follows:

The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.[3]

9 U.S.C. § 201 provides that the Convention shall be enforced in United States

---

1. The United States acceded to the Convention with the reservations set forth in Article I, Section 3:

    3. When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State. It may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration.

    Chile was an original signatory of the Convention.

2. The term "agreement in writing" is defined in the Convention as including an arbitral clause in a contract or "an arbitration agreement." Art. II, Sec. 2.

3. The United States Court of Appeals for the Third Circuit has pointed out the mandatory nature of Article II, Section 3:

    There is nothing discretionary about article II(3) of the Convention. It states that district courts *shall* at the request of a party to an arbitration agreement refer the parties to arbitration. The enactment of Pub.L. 91–368 [9 U.S.C. § 201 et seq.], providing a federal remedy for the enforcement of the Convention, . . . demonstrates the firm commitment of the Congress to the elimination of vestiges of judicial reluctance to enforce arbi-

courts. 9 U.S.C. § 2 recognizes the validity of "a written agreement to submit to arbitration an existing controversy" arising out of "a contract evidencing a transaction involving commerce."[4] 9 U.S.C. § 202 makes it clear that such a written arbitration agreement "falls under the Convention."[5]

Since plaintiff's complaint involves the same claims that the parties agreed to arbitrate pursuant to the submission agreement, Article II, Section 3 of the Convention mandates that the parties be referred to arbitration. Moreover, 9 U.S.C. § 206 empowers this court to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."

Thus this court directs plaintiff to proceed with the arbitration proceedings that are already underway in Chile pursuant to the submission agreement.

The Convention requires recognition of arbitration agreements and referral of the parties to the forum which they have selected for resolution of their dispute. Once this has been done, neither the Convention nor the United States Arbitration Act provides for further judicial involvement until a party specifically seeks recognition of an award. This is in contrast to Section 3 of the United States Arbitration Act, 9 U.S.C. § 3, which does not require referral but specifically requires a "stay [of] the trial of the action until such arbitration has been had in accordance with the terms of the agreement." The finality of the referral procedure, and the absence of any provision for the retention of jurisdiction after referral by the court, indicates that dismissal of the complaint for lack of subject matter jurisdiction is the appropriate remedy under the Convention.[6]

SO ORDERED.

---

tration agreements, at least in the international commercial context.
*McCreary Tire & Rubber Co. v. CEAT*, 501 F.2d 1032, 1037 (3d Cir. 1974).

4. 9 U.S.C. § 2:
§ 2. *Validity, irrevocability, and enforcement of agreements to arbitrate*
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

5. 9 U.S.C. § 202
§ 202. *Agreement or award falling under the Convention.*
An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

6. See *McCreary Tire & Rubber Co.*, 501 F.2d 1032, 1038 (3d Cir. 1974):
Unlike § 3 of the federal Act, article II(3) of the Convention provides that the court of a contracting state shall "refer the parties to arbitration" rather than "stay the trial of the action." The Convention forbids the courts of a contracting state from entertaining a suit which violates an agreement to arbitrate.