**Francesco DiMERCURIO,
Plaintiff, Appellant,**

v.

**SPHERE DRAKE INSURANCE, PLC,
No 1 a/c, Defendant, Appellee.**

**No. 99–1470.**

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1999.

Decided Jan. 31, 2000.

Joseph M. Orlando with whom Vita A. Palazzolo was on brief for appellant.

Richard H. Pettingell for appellee.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and
BOUDIN, Circuit Judge.

COFFIN, Senior Circuit Judge.

This case requires us to evaluate the validity of an arbitration provision contained in an insurance policy issued by London-based appellee Sphere Drake Insurance PLC for coverage on a Massachusetts fishing boat. Appellant Francesco DiMercurio, a fisherman who was injured when the boat sank, claims that the arbitration clause is unenforceable for various reasons, among them that Massachusetts law voids provisions in insurance policies that deprive the commonwealth's courts of jurisdiction over the insurer. *See* Mass. Gen. Laws ch. 175, §§ 3, 22. The district court upheld the validity of the arbitration clause, and we affirm.

### I. *Factual Background*

The parties' dispute originated with the sinking in July 1994 of the F/V CAPE COD, a commercial shipping vessel owned by a Gloucester, Massachusetts company, Rosalie & Matteo Corporation. Appellant DiMercurio, a fisherman, suffered injuries in the incident and filed a claim for damages against Rosalie & Matteo. Rosalie & Matteo's insurer, Sphere Drake, denied the claim and voided the policy on the ground that the insured had never obtained a condition survey that was a prerequisite for coverage.

DiMercurio subsequently filed a personal injury suit against Rosalie & Matteo, but the company, whose only asset had been the F/V CAPE COD, defaulted. In March 1997, the district court awarded DiMercurio $350,000. A month later, Rosalie & Matteo assigned to DiMercurio all rights it had against Sphere Drake under the insurance policy.

DiMercurio then took his claim directly to Sphere Drake, demanding that the insurer pay the $350,000 judgment. Sphere Drake denied the demand and sought to invoke the arbitration process specified in the policy, which called for arbitration of all coverage disputes in London. DiMercurio responded by filing this action, in which he challenges the validity of the arbitration provision and seeks recovery of his damages award.

The district court granted summary judgment for Sphere Drake, concluding that the arbitration clause was enforceable and that the parties' dispute over coverage must be resolved pursuant to its procedures. This appeal followed.

### II. *Discussion*

DiMercurio's primary argument on appeal is that the arbitration provision is unenforceable because it effectively deprives the Massachusetts courts of jurisdiction in contravention of Massachusetts General Laws chapter 175, § 22, which voids "any condition, stipulation or agreement [in an insurance policy] depriving the courts of the commonwealth of jurisdiction

of actions against [the insurer]."[1] He alternatively asserts that the provision is invalid on grounds of unconscionability, primarily due to lack of mutuality of obligation. We explain below why we find neither of these contentions to have merit.

### A. *Standard of Review*

 We review the district court's grant of summary judgment *de novo*. *See Bridges v. MacLean Stevens Studios, Inc.*, 201 F.3d 6 (1st Cir.2000). At issue is the validity of a contract provision—the arbitration clause—and our task is to ascertain the intentions of the parties, consistent with state law principles and with due regard for the federal policy favoring arbitration. *See Brennan v. King*, 139 F.3d 258, 264 (1st Cir.1998). The parties identify no significant factual dispute, disagreeing instead over the legal significance of the undisputed record. We therefore proceed to address those questions of law.

### B. *Enforceability of an International Arbitration Clause*

 An arbitration provision in an international commercial agreement such as the London-issued insurance policy in this case is governed by Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, which implemented the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), ratified by the United States, September 30, 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997 (reprinted following 9 U.S.C. § 201). A court in the United States faced with a request to refer a dispute governed by Chapter Two to arbitration performs a "very limited inquiry" into whether an arbitration agreement exists and falls within the Convention's coverage. *See Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186 (1st Cir.1982).[2] An agreement that satisfies the prerequisites, as does the provision in the Sphere Drake policy, is enforceable under the Convention unless it is "null and void, inoperative or incapable of being performed." Art. II, Sec. 3. It is at that second stage of inquiry that DiMercurio contends the Sphere Drake provision fails.

### C. *Arbitration and Jurisdiction*

DiMercurio argues that the arbitration provision in the Sphere Drake policy is "null and void" under section 22 of the Massachusetts General Laws, which bars any condition in an insurance policy that deprives Massachusetts courts of jurisdiction. The arbitration provision does just that, he maintains, by requiring that his dispute be taken out of the commonwealth's courts. He further argues that the general federal policy in favor of arbitration, as expressed through the FAA, does not trump section 22 because the McCarran–Ferguson Act, 15 U.S.C. § 1012(b), explicitly protects state laws regulating "the business of insurance" from preemption by federal legislation. *See Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("state courts can-

---

1. Section 22, more fully stated, provides:

 No company ... shall make, issue or deliver any policy of insurance ... containing any condition, stipulation or agreement depriving the courts of the commonwealth of jurisdiction of actions against it; ... Any such condition, stipulation or agreement shall be void.

 Section 3 provides, in relevant part:

 No company shall make a contract of insurance ... upon or relative to any property or interests or lives in the commonwealth, or with any resident thereof ... except as authorized by this chapter ... or

except as otherwise expressly authorized by law. . . .

2. The court must consider four preliminary questions: (1) is there a written agreement to arbitrate the subject of the dispute? (2) does the agreement provide for arbitration in the territory of a signatory of the Convention? (3) does the agreement arise out of a commercial relationship? (4) is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? *See Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir.1982).

not apply state statutes that invalidate arbitration agreements") (citing *Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).[3]

Whatever the reach of the McCarran–Ferguson Act, it is relevant here only if state law voids the Sphere Drake arbitration provision as an "agreement depriving the courts of the commonwealth of jurisdiction." The district court ruled that this was not such an agreement, rejecting the view that arbitration ousts a court of jurisdiction. The court relied in large part on our own case law stating precisely that conclusion. *See Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER,* 29 F.3d 727, 733 (1st Cir.1994)("[A]n agreement to arbitrate does not deprive a federal court of its jurisdiction over the underlying dispute."), *aff'd,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); *Morales Rivera v. Sea Land of Puerto Rico, Inc.,* 418 F.2d 725, 726 (1st Cir.1969) (holding that arbitration clauses are "not destructive of jurisdiction"); *see also Vimar Seguros,* 515 U.S. at 542, 115 S.Ct. 2322 (O'Connor, J., concurring) ("Foreign arbitration clauses of the kind presented here do not divest domestic courts of jurisdiction, unlike true foreign forum selection clauses....").

DiMercurio challenges this precedent. He claims that language in the FAA and in other case law indicates that, but for the FAA, courts are ousted of jurisdiction by arbitration provisions. Although he acknowledges that the FAA was intended to confirm a court's jurisdiction while permitting enforcement of arbitration agreements, he maintains that any jurisdiction-reviving impact of the FAA is negated in

this instance by the combined force of section 22 of the Massachusetts General Laws' chapter 175 and the McCarran–Ferguson Act. In other words, section 22 invalidates arbitration agreements because they divest a court of jurisdiction, and the McCarran–Ferguson Act prevents the FAA, and its policy favoring arbitration, from preempting section 22. He contends that our prior decisions holding that arbitration does not negate jurisdiction fail to take into account this relationship among the federal and state statutes, and thus are not dispositive. In addition, he invokes as further support for his position decisions holding that a case referred to arbitration under the Convention should be dismissed for lack of subject-matter jurisdiction.

DiMercurio's thesis unquestionably has historical support. The prevailing attitude of the courts toward arbitration before passage of the FAA was one of disapproval, and this typically was couched as an objection to being ousted of their jurisdiction. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 220 n. 6, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (explaining history of court refusal to enforce arbitration agreements on the ground that they ousted courts of jurisdiction); *see also Allied–Bruce Terminix Cos.,* 513 U.S. at 270–71, 115 S.Ct. 834 (similar). Section 4 of the FAA appears to adopt the ouster concept by referring to the jurisdiction courts would have "save for" an arbitration agreement.[4] Similarly, in *American Sugar Refining Co. v. The Anaconda,* 138 F.2d 765 (5th Cir.1943), *aff'd,* 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1944), the Fifth Circuit states that, prior to enactment of the FAA, an agreement to arbitrate would not be enforced in United States courts

---

**3.** The McCarran–Ferguson Act provides in relevant part: "No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b).

**4.** Section 4 states, in relevant part:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate

under a written agreement for arbitration may petition any United States district court which, *save for such agreement, would have jurisdiction* under Title 28, in a civil action or in admiralty of *the subject matter of a suit arising out of the controversy between the parties,* for an order directing that such arbitration proceed....

9 U.S.C. § 4 (emphasis added).

because "parties may not by private agreement oust the jurisdiction of the courts." *Id.* at 766. The court then continued:

The act was passed not to oust the jurisdiction of the courts but to provide for maintaining their jurisdiction while at the same time recognizing arbitration agreements as affirmative defenses and providing a forum for their specific enforcement.

*Id.* at 766–67. *See also, e.g., Kurt Orban Co. v. S/S CLYMENIA,* 318 F.Supp. 1387, 1390 (S.D.N.Y.1970) (quoting above language from *The Anaconda* ).

DiMercurio asserts that such language demonstrates that the FAA was necessary to give back to courts jurisdiction that otherwise is usurped by an arbitration provision. Thus, if the FAA is rendered inapplicable here by the McCarran–Ferguson Act, DiMercurio maintains that the Massachusetts courts remain "ousted of jurisdiction" by the Sphere Drake arbitration provision, in violation of section 22.

Our problem with this argument is that the prevailing attitude has changed. While some of the authority on which DiMercurio relies may reflect his view that arbitration without the restorative effect of the FAA unlawfully ousts a court of jurisdiction, that view has lost much, if not all, of the legitimacy it once may have had. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626–27, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution."). Agreements to arbitrate are now typically viewed as contractual arrangements for resolving disputes rather than as an appropriation of a court's jurisdiction. *See, e.g., Mastrobuo-*

*no v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (FAA aims " 'to ensure the enforceability, according to their terms, of private agreements to arbitrate' ") (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)); *Dean Witter Reynolds,* 470 U.S. at 219–20, 105 S.Ct. 1238 (purpose of FAA was "to place an arbitration agreement 'upon the same footing as other contracts, where it belongs' "); *Bercovitch v. Baldwin School, Inc.,* 133 F.3d 141, 147–48 (1st Cir.1998) (same); *Morales Rivera,* 418 F.2d at 726 (agreements to arbitrate are not destructive of jurisdiction, but "[t]hey are, precisely, agreements, and as such may be pleaded as a personal defense"); *Cranston Teachers Ass'n v. Cranston School Comm.,* 120 R.I. 105, 386 A.2d 176, 178 (R.I.1978) (arbitration agreement does not implicate court's "power to adjudicate the dispute" but "raises the distinct question whether the court should have exercised that power"); *cf. Central Contracting Co. v. Maryland Cas. Co.,* 367 F.2d 341, 345 (3d Cir.1966) (a forum selection clause does not oust the jurisdiction of the courts; "in effect it merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise jurisdiction").

Indeed, despite the language in section 4 of the FAA quoted by DiMercurio suggesting that an arbitration clause affects jurisdiction, the House Report accompanying the act indicates that the drafters understood that the problem was not really jurisdictional, but rather that the jurisdiction concept was an illogical remnant of ancient English law. *See* H.R.Rep. No. 96, 68th Cong., 1st Sess., 1–2 (1924).[5] The Supreme

---

5. The Report states:

The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived for so long a period that the principle became firmly embedded

Court has observed that the "preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered," *see Dean Witter Reynolds,* 470 U.S. at 219, 105 S.Ct. 1238, and the statutory obligation of courts to do so appears to have opened the door to erosion of the inherited concern about ouster of jurisdiction. *See generally Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 209–12, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring) (discussing possible change in the "traditional judicial hostility against ousting courts, as the phrase ran, of their jurisdiction," and noting, "Law does change with times and circumstances, and not merely through legislative reforms.") (footnote omitted).

We think it of some note that section 204 of the FAA's Chapter Two, which was enacted nearly half a century after the FAA was first adopted, does not refer to the jurisdiction a court would have "save for" an arbitration agreement, but instead states that an action or proceeding "over which the district courts have jurisdiction" may be brought "in any such court in which *save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought* . . . ." 9 U.S.C. § 204 (emphasis added).

The difference in language reflects the modern view that arbitration agreements do not divest courts of jurisdiction, though they prevent courts from resolving the

merits of arbitrable disputes. Further evidence that Congress views the courts as retaining ultimate authority over a case despite the referral to arbitration is the provision in Chapter Two of the FAA allowing a party to seek an order confirming the arbitrator's award. *See id.* § 207.[6] DiMercurio complains that drawing a line between a court's jurisdiction over a case and its authority to hear a case creates a distinction without a difference. We disagree. It is neither illogical nor meaningless for a court's jurisdiction to remain intact and crucial to the overall arbitration scheme even while it honors the parties' voluntary agreement to deal with the merits outside the courtroom. It is his concept of on-again, off-again, on-again jurisdiction—since a court must have subject-matter jurisdiction both to refer to arbitration and to confirm an arbitration award—that strikes us as illogical.

DiMercurio's alternative argument fares no better. To prove that arbitration agreements governed by the Convention, in particular, divest courts of jurisdiction, he invokes case law of fairly recent vintage in which judges ordered dismissals for "lack of subject matter jurisdiction" when faced with such agreements. *See, e.g., Siderius, Inc. v. Compania de Acero del Pacifico, S.A.,* 453 F.Supp. 22, 25 (S.D.N.Y.1978); *Ledee v. Ceramiche Ragno,* 528 F.Supp. 243, 246 (D.P.R.1981) (citing *Siderius* ), *aff'd,* 684 F.2d 184 (1st Cir. 1982); *see also Tennessee Imports, Inc. v.*

in the English common law and was adopted with it by the American courts. The courts have felt that the precedent was too strongly fixed to be overturned without legislative enactment, although they have frequently criticised [sic] the rule *and recognized its illogical nature* and the injustice which results from it. This bill declares simply that such agreements for arbitration shall be enforced, and provides a procedure in the Federal courts for their enforcement. H.R.Rep. No. 96, 68th Cong., 1st Sess., 1–2 (1924) (*quoted in Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 220 n. 6, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis added)). *See also Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 130

L.Ed.2d 753 (1995) ("American courts initially followed English practice, perhaps just 'stand[ing] . . . upon the antiquity of the rule' prohibiting arbitration clause enforcement, rather than 'upon its excellence or reason.' " (citations omitted)).

6. The Sphere Drake policy acknowledges the possibility of post-arbitration proceedings in court, stating that no legal action may be brought against the company "except by way of arbitration . . . or by way of enforcement proceedings brought to recover" any sum awarded in the arbitration. *See* Policy Clause 54.

*Filippi*, 745 F.Supp. 1314, 1323 (M.D.Tenn.1990) (noting split in precedent over whether a court may retain jurisdiction under the Convention after finding an enforceable agreement to arbitrate; collecting cases). The rationale for these dismissals is the finality of the referral to arbitration under the Convention and Chapter Two of the FAA, neither of which provides explicitly for a stay of proceedings pending arbitration, as does the FAA's Chapter One. *See Ledee*, 528 F.Supp. at 246; *Siderius*, 453 F.Supp. at 25.[7] *Cf. The Anaconda*, 322 U.S. at 44, 64 S.Ct. 863 (noting that Chapter One's stay provision "envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate").

These cases are of limited help to Di-Mercurio, however, for two reasons. First, contrary to the notion of a "final" referral, the parties may—as noted above—return to court for confirmation of an arbitration award. Moreover, Chapter Two of the FAA includes a provision extending Chapter One "to actions and proceedings brought under this chapter to the extent that that chapter is not in conflict with this chapter or the Convention." 9 U.S.C. § 208. Thus, the provision for a stay in section 3 of Chapter One may be impliedly incorporated into Chapter Two, making international arbitration agreements no more "final" than domestic ones. *See Tennessee Imports*, 745 F.Supp. at 1324.

The second flaw in DiMercurio's reliance on dismissals for lack of subject-matter jurisdiction is his failure to take into account "the chameleon-like quality of the term 'jurisdiction'" and its "wide variety of meanings," *Prou v. United States*, 199 F.3d 37, 45 (1st Cir.1999). We recently noted, as an example, that a reference to "jurisdiction" embraces the very different concepts of subject-matter jurisdiction and personal jurisdiction, the former concerning the court's constitutional power to hear a case and the latter relating to a litigant's waive-able protection from suit in a particular forum. *See id.* at 45. Here, as in *Prou*, yet another aspect of the word "jurisdiction" is "of particular pertinence," namely,

> the unfortunate penchant of judges and legislators to use the term "jurisdiction" to describe the technically distinct notion of a court's authority to issue a specific type of remedy in a case in which the threshold requirements of subject-matter and personal jurisdiction are not open to question.

*Id.* at 45.

The semantic imprecision, coupled with the favorable modern attitude toward arbitration agreements, diminishes the force of precedent indicating that an agreement to resolve disputes by arbitration is destructive of subject-matter jurisdiction. Because the term "subject-matter jurisdiction" is "often misused," *Cranston Teachers Ass'n*, 386 A.2d at 178, cases to the effect that a court lacks authority to act in the face of a valid arbitration agreement do not necessarily implicate "jurisdiction in the basic sense, but [may] stand merely for the proposition that if either party seasonably claims his right to arbitrate, the agreement must be recognized." *Morales Rivera*, 418 F.2d at 726; *see also, e.g., J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 322 (4th Cir.1988) (remanding with instructions "to *decline* to exercise jurisdiction over count one, *other than to refer it to arbitration*, and then *to dismiss this action*" (emphasis added)). We therefore give little weight to language dismissing arbitrable claims for lack of "jurisdiction."

Although our review of authorities strongly indicates that DiMercurio's "ouster of jurisdiction" concept is for the most part outmoded as applied to arbitra-

---

7. The court in *Tennessee Imports* concluded that *either* a dismissal for lack of subject-matter jurisdiction *or* a stay of proceedings may be appropriate under the Convention and the FAA, depending upon the circumstances. *See* 745 F.Supp. at 1324–25.

tion agreements, we cannot lay this argument to rest without looking specifically at the Massachusetts statute he invokes. Given that section 22 of chapter 175 was enacted in 1856, DiMercurio reasonably can argue that the statute was intended, and therefore still must be construed, to bar enforcement of arbitration agreements in insurance policies governed by Massachusetts law.[8]

Massachusetts law in this area, however, also has developed over time. As we shall explain, we are confident that the Sphere Drake provision is fully enforceable under current Massachusetts law.

### D. *The Impact of the Arbitration Clause under Massachusetts Law*

Despite the multi-faceted nature of the term "jurisdiction," it is more than likely that at the time section 22 was enacted in 1856, and for some time thereafter, the Massachusetts legislature's concern about insurance policy provisions seeking to divest courts of jurisdiction extended to arbitration agreements like the one at issue in this case. The case law shows that Massachusetts' attitude toward arbitration was within the mainstream for the time. In *Bauer v. International Waste Co.*, 201 Mass. 197, 87 N.E. 637 (1909), for example, the Massachusetts Supreme Judicial Court considered an arbitration clause in a commercial contract and concluded:

[T]his was an attempt to leave to the arbitrator the decision whether there had been any violation of the agreement with the stipulation that his decision was to be final. This is not an agreement as to some preliminary, subsidiary or ancillary matter in aid of an action at law or a suit in equity, but *an attempt to wholly oust the courts of jurisdiction respecting the subject matter.* It is settled by a long line of authorities in this jurisdic-

tion that such an agreement cannot be enforced.

*Id.* at 202–03, 87 N.E. 637 (emphasis added); *see also Sanford v. Boston Edison Co.*, 316 Mass. 631, 636, 56 N.E.2d 1 (1944) (arbitration provisions that "contemplate the entire and final settlement of all controversies to which they apply" are unenforceable because such provisions may not be allowed to oust the court of jurisdiction).

Just as the FAA changed the landscape with respect to arbitration under federal law, however, the state's adoption in 1960 of the Uniform Arbitration Act for Commercial Disputes must be viewed as an official change of outlook. *See* Mass. Gen. Laws Ann. ch. 251, §§ 1–19. Section 1 of the Massachusetts arbitration act provides as follows:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be *valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.* The provisions of this chapter shall not apply to collective bargaining agreements to arbitrate . . . .

*Id.* § 1 (emphasis added).

This provision is telling in two important respects. First, it requires that arbitration agreements be enforced except in circumstances that would invalidate any other contract. This endorsement of arbitration all but states explicitly that Massachusetts no longer considers such agreements to oust courts of jurisdiction. The few grounds listed to invalidate arbitration clauses are consistent with the Convention's "null and void" clause, which limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses:

---

**8.** Although the parties debate whether section 22 applies to an insurance policy issued outside Massachusetts, our disposition makes it unnecessary to resolve that issue. For conve-

nience, we assume, without deciding, that section 22 is applicable to the Sphere Drake policy.

The parochial interests of the Commonwealth [of Puerto Rico], or of any state, cannot be the measure of how the "null and void" clause is interpreted. Indeed, by acceding to and implementing the treaty, the federal government has insisted that not even the parochial interests of the nation may be the measure of interpretation. Rather, the clause must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.

*Ledee,* 684 F.2d at 187 (rejecting provision in Puerto Rico Dealers Act that invalidated, on public policy grounds, arbitration clauses in dealers' contracts, and stating, "[A]n expansive interpretation of the [null and void] clause would be antithetical to the goals of the Convention."); *see also Mitsubishi Motors,* 473 U.S. at 629–31, 105 S.Ct. 3346; *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 515–19, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (" 'We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.' ") (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

Second, section 1 makes an explicit exception for arbitration provisions in collective bargaining agreements, thereby implicitly bringing arbitration provisions in insurance policies within its reach. Whether by restoring jurisdiction to the state courts, akin to DiMercurio's theory concerning the FAA, or by redefining the impact of arbitration, the Massachusetts arbitration act apparently took arbitration agreements outside the scope of section 22's bar on insurance policy provisions that divest courts of jurisdiction. Though we have found no precedent stating so explicitly, that conclusion is borne out by cases and commentary.

A widely used summary of Massachusetts law assessed the current state of the commonwealth's view of arbitration as follows:

It was not until 1960 when Massachusetts adopted the Uniform Arbitration Act for Commercial Disputes that the old "ouster of jurisdiction doctrine," at least as it applied to arbitration, was finally put to rest. Section 1 of the new Chapter 251 of the General Laws leaves little doubt of the Legislature's intent. . . .

Since the enactment of the Uniform Act, our courts have given faithful adherence to its broad purposes and today construe arbitration clauses as broadly as the parties to the agreement in question intend.

19 *Massachusetts Practice* Evidence § 102.6, at 45–46 (2d ed.1998) (footnotes omitted). The Massachusetts courts have been equally clear in affirming the state's support of arbitration provisions, *see O'Brien v. Hanover Ins. Co.,* 427 Mass. 194, 200, 692 N.E.2d 39, 43 (1998) (citation omitted) (referring to the "strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes"); *Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc.,* 403 Mass. 772, 774, 532 N.E.2d 681, 683 (1989) (same); *Town of Danvers v. Wexler Const. Co.,* 12 Mass.App.Ct. 160, 163, 422 N.E.2d 782, 784 (1981), and the cases addressing arbitration issues include those involving such agreements in insurance policies, *see, e.g., Spaneas v. Travelers Indem. Co.,* 423 Mass. 352, 668 N.E.2d 325 (1996); *Miles v. Aetna Casualty and Surety Co.,* 412 Mass. 424, 589 N.E.2d 314 (1992); *McGovern v. Middlesex Mut. Ins. Co.,* 359 Mass. 443, 269 N.E.2d 445 (1971). These latter cases provide particularly persuasive evidence of the enforceability of arbitration provisions in Massachusetts insurance policies.[9]

9. At oral argument, DiMercurio's counsel attempted to explain such precedent by stating that, if the parties agreed, arbitration agreements in insurance policies could be enforced. Here, however, the insurance purchaser, Rosalie & Matteo, agreed through its

The path of Massachusetts law, together with the analogous history described in the previous section, leads us to the conclusion that the Sphere Drake arbitration provision does not divest the courts of jurisdiction over claims against the company.[10] Unless the clause is subject to a standard contractual challenge, it is fully enforceable. We thus turn to DiMercurio's contention that the clause should be stricken because it is unconscionable.

### E. *Unconscionability*

DiMercurio argues that the arbitration provision should not be enforced against him because the contract does not impose a mutual obligation to arbitrate on the insurer. Although clause 53 of the policy requires that all coverage disputes be arbitrated in London, clause 28.1 permits the company to bring suit in any court of competent jurisdiction for unpaid premiums "or other sum of whatsoever nature due from the Assured."

We adhere to our view that one-sided agreements to arbitrate are not favored. *See McCarthy v. Azure*, 22 F.3d 351, 361 (1st Cir.1994). In this instance, however, both parties are required to arbitrate coverage disputes. The fact that the company may proceed in court to recover premiums or like fees—a proceeding that is likely to be much more confined than a coverage dispute—does not render the contract impermissibly unbalanced. *See Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 824, 434 N.E.2d 611, 618 (1982) (inclusion of a clause in a contract allowing one party, but not the other, to demand arbitration is not "unconscionable" per se).

---

broker to the terms of the Sphere Drake policy. *See* Section E *infra*. The cited Massachusetts insurance cases are therefore fully applicable and undermine DiMercurio's argument that the arbitration provision here is invalid.

10. We note that, in *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931 (10th Cir.1992), the Tenth Circuit invalidated an arbitration provision in an insurance policy based on the McCarran–Ferguson Act

Moreover, there is no evidence of undue power or deception on the part of the insurer in the negotiation of the policy. The particular coverage was selected by Rosalie & Matteo's broker, Marine Insurance Consultants International Limited, which was familiar with the Sphere Drake policy forms, including the arbitration provision. As Rosalie & Matteo's assignee, DiMercurio is bound by the terms and conditions to which the company agreed.

We therefore affirm the district court's refusal to invalidate the arbitration clause on grounds of unconscionability.

*For the foregoing reasons, the judgment of the district court is affirmed.*

---

because a Kansas statute confirming the validity of contractual arbitration agreements expressly excluded insurance contracts from its terms. The Kansas statute's express reference to arbitration obviously distinguishes that case from this one, where Massachusetts' section 22 imposes only a general bar on provisions that deprive the courts of jurisdiction. We take no view of the correctness of *Mutual Reinsurance.*