**AGP INDUSTRIES SA, (PERU)
et al, Plaintiffs**

v.

**JPS ELASTROMERICS CORPORATION, STEVENS URETHANE DIVISION, Defendant.**

**C.A. No. 07–30034–MAP.**

United States District Court,
D. Massachusetts.

Sept. 20, 2007.

Anthony M. Moccia, Peter Francis Carr, II, Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Plaintiffs.

David R. DiCicco, Powers, DiCicco & Sahagian, Lynnfield, MA, for Defendant.

### MEMORANDUM AND ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

MICHAEL A. PONSOR, District Judge.

### I. INTRODUCTION

This case concerns a "battle of the forms" and whether a valid and binding arbitration agreement exists between the parties. Plaintiffs, five AGP Group companies (collectively "AGP"), instituted this action for (1) a declaration that Plaintiffs are not bound to arbitrate disputes with the Defendant, JPS Elastomerics Corp., Stevens Urethane Division ("JPS") and (2) injunctive relief staying the arbitration proceedings initiated by JPS.

Both parties have moved for summary judgment. Defendant asserts the disputed arbitration clause is binding on the parties. Plaintiffs argue the arbitration clause is void as a matter of law.

Counsel for the parties appeared before this court on September 12, 2007 for argument on the cross motions; the court indicated it would allow Plaintiffs' motion and described its reasons in detail orally.

The purpose of this memorandum is to set forth, in distilled form, the rationale for the court's decision.

### II. FACTS

JPS manufactures and sells interlayer films. Plaintiffs use the interlayer films in the manufacture of bullet-resistant and safety glass. From 2004 to 2006, JPS sold interlayer films to the AGP plants on numerous occasions.

Beginning in 2005, a dispute arose between the parties about the quality of some of the interlayer films JPS sold to the AGP plants. After initial attempts to resolve the issue failed, JPS filed a Demand for Arbitration in October 2006 against all five of the Plaintiff AGP Group companies. In March 2007, Plaintiffs filed this action, disputing the existence of a valid and binding arbitration agreement between the parties.

The transactions and communications between the parties relating to approximately one hundred sales occurred as follows. AGP plants submitted purchase orders to JPS that contained many specific terms and requested invoices from JPS. The purchase orders did not contain any reference to arbitration or mention any method for resolving disputes. JPS then prepared original invoices on its standard form.

The JPS invoice forms had pre-printed information on both sides. Specific terms were printed onto the front of the forms. In multi-page invoices the front of each form was numbered sequentially. No page numbers appeared on the back of the invoices. The front of the form did not

direct the recipient to see the reverse side for additional terms, though fourteen additional terms were listed on the reverse. Term 13 stated that any disputes would be resolved through arbitration in Boston, Massachusetts.

JPS sent the original, two-sided invoices to the AGP plants. AGP filed these invoices without reading them and did not become aware of the arbitration clause until JPS demanded arbitration. The arbitration clause was not contained in any document signed by both parties nor was it referenced in any communications between the parties, prior to JPS's arbitration demand.

## III. *DISCUSSION*

█ Because the parties are from different countries, the validity of any agreement to arbitrate is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (entered into force with respect to the United States, Dec. 29 1970) (the "Convention"), as implemented, 9 U.S.C. §§ 201–208. *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 74 (1st Cir.2000).[1] Courts determining whether there is an arbitration agreement enforceable under the Convention make a limited inquiry into four questions.[2] A

court has jurisdiction to enforce the arbitration clause only if it answers each question in the affirmative. *Id.* (enforcing arbitration agreements only if they satisfy the four prerequisites). Because this court answers no to the first query—Was the disputed arbitration clause contained in an "agreement in writing"?—the court declares the arbitration clause unenforceable.

Article II, § 2 of the Convention defines an "agreement in writing" as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." This language could be read to mean that agreements in writing can be arbitral clauses in contracts or they can be arbitration agreements that have been signed by both parties or are contained in a exchange of letters or telegrams. Or it could be read to mean that an agreement in writing is one signed by the parties or contained in an exchange of letters or telegrams, whether it is a clause in a larger contract or a separate arbitration agreement.

█ This ambiguity presents a question of first impression in the First Circuit, and so the court looks to other circuit courts for guidance. Based on the strength of the Second Circuit's reasoning in *Kahn*

---

1. Colombia and Peru are signatories to the Convention, while Brazil is not. Application of the Convention turns on the situs chosen for arbitration, not the nationality of the parties. *See E.A.S.T., Inc. Of Stamford v. M/V Alaia*, 876 F.2d 1168, 1172 (5th Cir.1989) ("[T]he Convention focuses on the situs of the arbitration, not upon the nationality of the parties.") (citing *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326 (5th Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987)). Here the Convention controls the court's recognition of all the disputed arbitration clauses because all call for arbitration in Boston, Massachusetts.

2. The four preliminary questions the court must consider are:
   (1) is there a written agreement to arbitrate the subject of the dispute? (2) does the agreement provide for arbitration in the territory of a signatory of the Convention? (3) does the agreement arise out of a commercial relationship? (4) is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?
   *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 74 (1st Cir.2000) (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir. 1982)).

*Lucas Lancaster, Inc. v. Lark Int'l, Ltd.*, 186 F.3d 210 (2d Cir.1999), the court adopts the Second Circuit's interpretation that both "an arbitral clause in a contract" and "an arbitration agreement" must be "signed by the parties or contained in an exchange of letters or telegrams."[3] *Id.* at 218.

In *Kahn Lucas*, the court was asked to decide whether a clause printed on the reverse of two purchase orders sent by the buyer, Kahn Lucas, to the seller, Lark, constituted an "agreement in writing" under the Convention. The Second Circuit concluded that there was no "agreement in writing" because the purchase orders were neither signed by both parties, nor did they constitute "an exchange of letters or telegrams." *Id.* at 218.

 The phrase "exchange of letters or telegrams" suggests a level of interchange that is not present during a mere exchange of forms. The sheer number of invoices sent by JPS does not create such an interchange. In short, the facts here and in *Kahn Lucas* are sufficiently similar that the court reaches the same result as the Second Circuit. Preprinted arbitration terms on the back of a form that is not signed by both parties are not "agreements in writing" enforceable under the Convention.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Dkt. No. 15) is hereby ALLOWED, and Defendant's Motion for Summary Judgment (Dkt. No. 13) is hereby DENIED. The court hereby declares that Plaintiffs are not bound to arbitrate the dispute underlying this litigation and permanently stays the arbitration proceedings initiated by Defendant regarding the dispute underlying this litigation.

The Clerk is ordered to enter judgment for Plaintiffs; the case may now be closed.

It is So Ordered.

---

**3.** In *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir.1994), the Fifth Circuit reached a different conclusion as to the meaning of "agreement in writing" as it is defined in Article II, § 2 of the Convention. The Fifth Circuit offered little analysis to support its conclusion that the Convention applies where there is "(1) an arbitral clause in a contract or (2) an arbitration agreement, (a) signed by the parties or (b) contained in an exchange of correspondence or telegrams." *Id.* at 669. In contrast, the Second Circuit went into great detail analyzing the grammar of Article II, § 2 and comparing the meaning of the section given by different foreign language versions of the Convention. The Third Circuit has also adopted the Second Circuit's analysis. *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir.2003).